21851

William J. BRYAN, also known as William J. Bryan, Jr., and Audrey L. Bryan Brandon, Respondents-Appellants, v. SOUTHERN REALTY AND CON-STRUCTION COMPANY, INC., Farmers and Merchants Bank, Leroy Gruber, Evelyn Gruber, J. B. Rhodes, Betty S. Rhodes, John H. Peurifoy, Frances A. Peurifoy, Keith M. Kinard, Martha Sue Kinard, Oscar Craven, South Carolina Tax Commission and South Carolina Employment Security Commission, Defendants, of whom Southern Realty and Construction Company, Inc., Farmers and Merchants Bank, Leroy Gruber, Evelyn Gruber, J. B. Rhodes, Betty S. Rhodes, John H. Peurifoy, Frances A. Peurifoy, Keith M. Kinard, Martha Sue Kinard, Oscar Craven are Appellants-Respondents.

(299 S. E. (2d) 482)

*Hammer & Bernstein*, Columbia; and *Thomas M. Howell, Jr.*, Walterboro, *for appellants-respondents.*

*Smoak & Smoak*, Walterboro, *for respondents-appellants.*

Jan. 10, 1983.

HARWELL, Justice:

Bryan and Brandon initiated this foreclosure action to collect a debt owed them by Southern Realty and Construction Company. Bryan and Brandon appealed the master's recommendation that the complaint be dismissed to the circuit court. The circuit court adopted the master's findings of fact but reversed her conclusions of law and held that Southern was in default and that Bryan and Brandon were entitled to relief. We reverse the circuit court.

The Colleton County property involved here is known as the Palmetto Estates Subdivision. William J. Bryan owned approximately 60% of the property, and his sister, Audrey L. Bryan Brandon, owned the other 40%. Farmers and Merchants Bank had a mortgage on about 65 acres of Bryan's property. Subsequently, Farmers released from the lien several, but not all, of the lots as Bryan made payments on his loan.

On May 19, 1976, Bryan and Brandon sold Southern the land known as Palmetto Estates Subdivision for $192,150.00. In exchange, Southern executed a promissory note for the debt and secured it by mortgaging the land. The non-interest bearing promissory note stated the debt was "payable in installments dependent upon the sale of lots." It further stated that the agreement was for a fifteen year period, that Southern would release a minimum of ten lots annually and no more than twenty-five percent of the whole tract per year,

and that an attorney's fee of twenty percent plus all costs and expenses would be added to the $192,150.00 if legal proceedings were necessary.

On August 6, 1976, Southern sold Gruber, Rhodes, Peurifoy, and Kinard fifteen lots each. In exchange, they each paid Southern $5.00. On the same day, Gruber, Rhodes, Peurifoy, and Kinard respectively conveyed to Farmers his fifteen lots by way of a mortgage. In exchange, Farmers paid each of them $16,200.00. The same day Southern paid Bryan and Brandon $12,500.00 for ten lots; consequently, Bryan and Brandon released ten lots from their lien. Thereafter, on February 18, 1977, Southern conveyed to Craven, by way of mortgage, a portion of the Palmetto Estates Subdivision.

On May 18, 1978 Southern's president asked for an extension of ninety days to pay $12,500.00, by May 19, 1978, the date it considered to be its next due date. In exchange, Southern offered to pay interest on the $12,500.00, during the ninety days, Bryan agreed to consult his sister, Brandon, who was the co-mortgagee, concerning the extension. On May 25, 1978, Bryan and Brandon's attorney notified Southern's president that the extension was denied. Consequently, Southern's president offered a check for $12,500.00, which Bryan and Brandon refused. Instead, they declared Southern had breached the terms of the note and demanded payment in full.

In an action in equity, tried first by the master or a special referee and concurred in by the judge, the findings of fact will not be disturbed on appeal unless found to be without evidentiary support or against the clear preponderance of the evidence. *Townes Assoc., Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). Here, although the circuit court judge disagreed with the master's conclusions of law, he concurred in her findings of fact. We conclude the findings of fact are supported by the evidence.

■ Both the master and the circuit court concluded that Southern's promissory note was unambiguous. The pertinent portions of the note state:

FOR VALUE RECEIVED, It, Southern Realty and Construction Company, Inc., promises to pay to William J. Bryan and Audrey L. Bryan Brandon, or order, the sum of One Hundred Ninety-Two Thousand One Hundred Fifty and No/100 ($192,150.00) Dollars, payable in installments

dependent upon the sale of lots out of a Tract of land tentatively known as Palmetto Estates Subdivision, in the County and State aforesaid.

\* \* \*

It is further agreed between the parties hereto that the duration of this Agreement shall be fifteen (15) years from the date hereon and that the aforesaid Southern Realty and Construction Company, Inc., will release a minimum of Ten (10) lots per year from the date hereon. It is further agreed between the parties hereto that during no period of One (1) year will the aforesaid Southern Realty and Construction Company, Inc., offer to release more than Twenty-five (25%) percent of the land area contained in Palmetto Estates Subdivision.

AND Southern Realty and Construction Company, Inc., does hereby further agree that if this note and agreement is placed in the hands of an Attorney for collection, or if this debt, or any part thereof, be collected by an Attorney or by legal procedures of any kind, an Attorney's fee of Twenty (20%) percent besides all costs and expenses incident upon such collection shall be added to the amount due upon this note and be collectible as a part thereof.

The master concluded that the note required Southern to pay for ten lots per year with the installment payments due annually on May 19th regardless of how many lots actually were sold during the year, subject to the minimum and maximum conditions set forth in the note. The circuit court disagreed, concluding instead that the note required Southern to pay as the lots were sold, subject to the minimum conditions. We agree with the master. The master found, and we agree, that the conveyances and the subsequent mortgages to Farmers were made as an accommodation so that Southern could obtain funds to improve the subdivision. The conveyances and mortgages did not affect the lien priority of Bryan's and Brandon's mortgage. All the grantees took subject to the existing mortgages. We agree with the master that the Note and Indenture do not prohibit the conveyance of the property securing the indebtedness.

Furthermore, we agree that Bryan granted Southern ■■ an implied extension of ninety days within which to pay the second installment. Southern offered to pay interest on the $12,500.00 in exchange for an extension of time. The promise to pay the interest constitutes valid consideration for the promise not to foreclose. *Marion Production Credit Association v. Smith*, 221 S. C. 172, 69 S. E. (2d) 705 (1952). However, Bryan argues that he could not agree to an extension without Brandon's permission. We disagree. A joint payee of a note can make a valid agreement to extend the time of payment without the other payee's consent. 10 C. J. S. *Bills and Notes* § 265 (1938). The evidence shows that from May 18, 1978 until May 25, 1978, Southern assumed that Bryan and Brandon were entertaining the ninety day extension. When Southern received Bryan's letter refusing the extension, it immediately tendered the $12,500.00 installment payment to Bryan's attorney who refused it. We agree with the master that Southern timely tendered payment after it was notified that no extension would be granted.

Accordingly, we conclude that the note has not been breached, and Bryan and Brandon are not entitled to judgment and foreclosure. Instead, we reverse the circuit court and agree with the master that the case be dismissed. Southern of course must tender all past installment payments.

Reversed.

LEWIS, C.J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.