0802

SOUTHERN REALTY AND CONSTRUCTION COMPANY, INC., Appellant v. William J. BRYAN, Jr., Audrey L. Bryan Brandon, W. Mitchell O'Quinn, Wickes Lumber Company, Inc., Oscar Craven, First National Bank in Orangeburg, Transouth Financial Corporation, Farmers and Merchants Bank, South Carolina Tax Commission, United States of America, National Homes Manufacturing Company, Marsh Furniture Company, FCX, Inc., First Federal Savings and Loan Association of Walterboro, Southwind Realty and Construction Company, Inc., J.B. Rhodes, Keith M. Kinard, Frances A. Peurifoy, Leroy Gruber, Joseph Iademarco, Gertrude H. Iademarco, J. Bruce Owens, Sharon A. Owens and Harriott B. Howell, of whom William J. Bryan, Jr., Audrey L. Bryan Brandon are Respondents.

(350 S. E. (2d) 194)

Court of Appeals

*Isadore S. Bernstein,* Columbia, *for appellant.*

*Paul N. Siegel* of *Smoak, Moody, Buckner & Siegel,* Walterboro, and *Barry I. Baker* of *Baker & Miller,* Charleston, *for respondents.*

Heard June 24, 1986.

Decided Sept. 29, 1986.

CURETON, Judge:

Appellant, mortgagor, Southern Realty and Construction Company (Southern) sued respondents Bryan and Brandon, mortgagees, for specific performance of the terms of a note and mortgage. Bryan and Brandon counterclaimed for reformation of the note and foreclosure of their mortgage. The trial court reformed the note and ordered foreclosure of the mortgage unless all payments due on the note were made current within sixty days. We affirm.

Although Southern interposed a counterclaim for money damages to Bryan and Brandon's answer and counterclaim, the primary causes of action in this suit are equitable. On appeal of an equitable action tried by a circuit judge alone without a reference, this court may find facts in accordance with its view of the evidence. *Marlow v. Marlow,* 284 S. C. 155, 325 S. E. (2d) 703 (Ct. App. 1984). A

court of equity, having assumed jurisdiction in a case, has the authority to award compensatory damages. *Alderman v. Cooper*, 257 S. C. 304, 185 S. E. (2d) 809 (1971); *Mortgage Loan Co. v. Townsend*, 156 S. C. 203, 152 S. E. 878 (1930).

In this appeal Southern challenges the trial court's rulings that: (1) its tender of installments due in 1983 was insufficient; (2) the note should be reformed to reflect a minimum annual payment of $12,500.00; and (3) it was not entitled to recover damages on its counterclaim.

In May 1976, Bryan and Brandon sold to Southern property known as Palmetto Estates Subdivision for the sum of $192,150.00. In exchange for the conveyance, Southern executed a note for the debt and secured it with a purchase money mortgage on the land. The note bore no interest and provided for payment in installments over 15 years. The note provided for release of the lots as follows:

> Those lost designed by the letter "L" on the aforesaid plat are designated as Low lots and they, along with any other lot not meeting Health Department Regulations with regard to septic tanks, are to be released upon the payment of Six Hundred and No/100 ($600.00) Dollars for each and every area containing Seventeen Thousand Five Hundred (17,500) square feet and proportionate fractions thereof. The aforesaid Southern Realty and Construction Company, Inc., agrees to give Thirty (30) days notice to the aforesaid William J. Bryan and Audrey L. Bryan Brandon in order to allow the aforesaid William J. Bryan and Audrey L. Bryan Brandon the opportunity to fill the said lot to Health Department specifications with regard to septic tanks. Should the aforesaid William J. Bryan Brandon fill this lot, then the release price thereof shall be Twelve Hundred Fifty and No/100 ($1250.00) Dollars for each area of Seventeen Thousand Five Hundred (17,500) square feet and proportionate fractions thereof. Lots 49 and 50 release for Seventeen Hundred Fifty and No/100 ($1750.00) Dollars.

> For all those other lots not so designated with the letter "L" and meeting Health Department regulations with regard to septic tanks, the release price shall be Twelve Hundred Fifty and No/100 ($1250.00) Dollars for

each area of Seventeen Thousand Five Hundred (17,500) square feet and proportionate fractions thereof.

It is further agreed between the parties hereto that the duration of this Agreement shall be fifteen (15) years from the date hereon: and that the aforesaid Southern Realty and Construction Company, Inc., will release a minimum of Ten (10) lots per year from the date hereon.

The plat referred to in the note showed dimensions for only a few lots. Approximately forty lots were designated as low on the plat.

On August 6, 1976, Southern made the annual installment due in May 1977 by paying to Bryan and Brandon $12,500.00 and receiving in exchange the release of 10 lots. The next installment was due in May, 1978.

A dispute arose regarding payment of the May 1978 installment. As a result, Bryan and Brandon declared Southern in default in the terms of the note and brought a foreclosure action. The Supreme Court held that Southern was not in default, but concluded that Southern "must tender all past installment payments." *Bryan v. Southern Realty and Construction Co.*, 278 S. C. 549, 553, 299 S. E. (2d) 482, 484 (1983).

In January 1983, Southern wrote to Bryan and Brandon stating that pursuant to the Supreme Court's decision, it would make 5 payments on the note and requested release of 50 specified lots. The letter continued:

I understand that none of the above lots meet the regulations of the Health Department with regard to Septic Tanks. Under the terms of the note, we hereby give you thirty days notice to allow you the opportunity to fill the said lots to Health Department specifications with regard to septic tank approval. Each lot will have to have a Health Department certificate of approval. Should the lots meet Health Department specifications and approval we are ready and willing to tender $1,250.00 each, otherwise the sum will be $600.00 per lot in accordance with the note, provided, of course, that the releases are also furnished.

Bryan and Brandon failed to respond to the January letter

or fill in any of the lots. Thereafter, on April 18, 1983, Southern tendered to Bryan and Brandon a check for $30,000.00 representing the sum to release 10 lots per year at $600.00 per lot for the past five years. The tender was refused by Bryan and Brandon who asserted that since only two of 50 lots were designated as low lots on the plat and because Southern had neither made application for a permit to construct septic tanks on the lots, nor been notified by the Health Department that the lots did not meet Health Department specifications, they were entitled to receive payment of $1,250.00 for release of each lot. They also claimed that, in any event, it was the intent of the parties that Southern would make minimum annual installments of $12,500.00.

Southern then brought this action to require Bryan and Brandon to accept their tender of $30,000.00 for release of the fifty lots. Bryan and Brandon counterclaimed for foreclosure of their mortgage and reformation of the note to reflect a requirement for the payment of minimum annual installments of $12,500.00.

We address first the question of whether the trial ██ judge should have reformed the note. A written instrument may be reformed on the basis of mistake only when the mistake is a mutual mistake of the parties. *Commercial Union Assurance Company v. Castile*, 283 S. C. 1, 4, 320 S. E. (2d) 488, 490 (Ct. App. 1984). The trial judge found clear, cogent and convincing evidence of a mutual mistake. He cited in support of this finding the contract of sale which provided "[a] minimum amount of Twelve Thousand and No/100 ($12,000.00) Dollars (sic) is to be paid on the mortgage indebtedness each year ..."; the testimony of Southern's President Charles E. Craven, Jr., who testified in the former action to the effect that both he and Bryan interpreted the agreement of the parties to require a minimum annual installment of $12,500.00; and Bryan's testimony that the parties intended for the note to provide for minimum payments of $12,500.00 per year. Additionally, the trial court considered a letter from Southern's attorney to Bryan and Brandon in May 1978 which enclosed a check in the amount of $12,500.00 which he characterized as "the annual payment." The only contrary evidence was the testi-

mony of Craven who sought to explain his testimony in the former action.[1] We agree with the trial judge that the evidence of mutual mistake is both clear and convincing.

■ Southern argues that Craven's testimony given in the former suit was inadmissible because the amount of the annual installments was not an issue in that action. As we read the excerpts contained in the trial judge's order,[2] Craven put the matter into issue when he testified more than once to the following effect:

Q. Does the word annual payment appear in that thing [note] at all?
A. Not that I see. But we agreed that that was an annual you know, our interpretation of it, Mr. Bryan and myself, that he gets a minimum of $12,500.00 a year.

Moreover, Southern's only contemporaneous objection to the evidence was that "the Supreme Court's decision is binding insofar as that was concerned." An exception raised on appeal must be on the same ground as the corresponding objection in the trial court. *Beck v. Gibson,* 268 S. C. 627, 235 S. E. (2d) 716 (1977); *Reid v. Swindler,* 249 S. C. 483, 154 S. E. (2d) 910 (1967). Clearly, the Supreme Court's decision is not determinative of this issue.

Southern also takes exception to the introduction into evidence of the contract of sale claiming the contract in fact contradicted the terms of the note in violation of the parol evidence rule and the rule of merger. There is no merit to this argument. Both the parol evidence rule and the doctrine of merger are rules governing construction of written documents. Here, Bryan and Brandon do not seek a construction of the note. Indeed, they concede that the note does not provide for a minimum payment of $12,500.00. Instead, they ask the court to reform the note to reflect their agreement with Southern to pay a minimum of $12,500.00 per year on the note. The distinction between the construction of a writ-

---

[1] Craven testified that he meant to make it clear in the former suit that a payment of $12,500.00 was due each year provided all of the lots he sought to have released met Health Department specifications for septic tanks.

[2] The transcript of the former hearing is not made a part of the record in this appeal.

ten instrument and reformation of it is set forth in 66 Am. Jur. (2d) *Reformation of Instruments* Section 6 (1973):

> When a court construes a written instrument, it is assumed that the instrument reflects the actual agreement of the parties, and the language calls for construction because it is uncertain or ambiguous. On the other hand, ambiguity or uncertainty has nothing to do with the reformation of a written instrument, but rather reformation is adjudged because the instrument, by reason of mistake or fraud, does not embody the true agreement of the parties. A contract may be clear and unambiguous as far as it goes and yet may not express the agreement of the parties, by reason of mutual mistake.

Parole evidence is admissible to show mistake. *McGrath & Bryan v. Barnes,* 13 S. C. 328 (1879). Besides, it would be virtually impossible to prove mutual mistake as a ground for reformation without parol evidence.[3] *See Commercial Union Assurance Company v. Castile,* 283 S. C. 1, 320 S. E. (2d) 488 (Ct. App. 1984).

Southern next argues that since the issue of reformation was not raised in the prior action involving construction of the note, principles of *res judicata* prevent Bryan and Brandon from litigating that issue now. We find no merit to this argument. As stipulated by Southern in its brief, "[T]he sole issue for determination in the former action was the construction of the language 'dependent upon the sale of lots' as determinative of the amounts due and payable for the year 1978." It is clear that Southern made no contention in the former suit that the minimum yearly payment was less than $12,500.00. We can think of no reason why Bryan and Brandon would have recognized that the amount of the minimum annual payment was a point of contention between the parties at the time of the former suit. We decline to apply the principle of *res judicata* because the issue is not one "which might have been raised in

---

[3] Parol evidence is used here in the sense of it being extrinsic to the note and mortgage.

the former suit." *Wold v. Funderburg*, 250 S. C. 205, 157 S. E. (2d) 180, 183 (1967).

Southern's argument that the trial judge erred in finding that the $30,000.00 tender was insufficient is now made moot by our holding that the note should be reformed to reflect a minimum payment of $12,500.00 per year. We recognize, however, that the parties have an ongoing relationship. To permit them to make a determination as to how many lots Southern is entitled to have released each year for its annual $12,500.00 payment, they need to know which party has the responsibility for obtaining a determination from the Health Department as to whether a given lot meets the Department's requirements for septic tanks.

Southern asserts that it may avail itself of the note provision for obtaining lot releases for the lesser sum of $600.00 by simply giving Bryan and Brandon 30 days notice to allow them the opportunity to fill the lots to Health Department specifications. The trial court disagreed and found that Southern must furnish proof that it had applied for septic tank approval and been refused. Southern concedes in its brief that as developer of the subdivision it had the responsibility to apply for septic tank permits "in order to build homes and to develop the [subdivision]." It argues, however, that it may desire the release of a lot for purposes other than building on the lot. We fail to comprehend the significance of this agreement. We agree with the findings of the trial judge on this point and adopt the following portions of his findings as the findings of this court:

> It is the finding of the court that the position of the Defendants, Bryan and Brandon, is correct. The testimony of the Health Department Official, Donald G. Campbell, and the regulations of the Department of Health and Environment Control, cited above, and of which the court took judicial notice, clearly shows that an application for septic tank approval must include the layout of the lot with plans submitted to the Health Department showing the location of the house and the location of the septic tank. Further, each of the lots must be flagged and the dimensions of each lot must be shown and the bearings of the lot must also be shown. Vol 24-A and Vol. 25, Regulation 61-56 and Regulation

61-57, South Carolina Code of Laws, 1976, as amended.

There is no way that the Defendants, Bryan and Brandon, would have any idea as to Mr. Craven's plans and ides as to the configuration, size and septic tank location as would be shown on a plot plan as to any proposed construction by Craven's Companies.

The history of the relationship between the parties to this action shows that [Southern] tendered monies to the Defendants, Bryan and Brandon, in August of 1976 ... without requiring [Bryan and Brandon] to obtain septic tank permits. In addition, Craven has built not only single family dwellings but also commenced construction of duplexes upon the subject premises.

The fact of the matter is that Mr. Cravens, or someone on behalf of [Southern], has always applied for septic tank permits in the past on those lots in which permits have been issued.

The note does not by express language impose an ■■ obligation on Southern to secure septic tank approval.

The trial judge implicitly found that the note contained an implied condition that Southern must apply for and be denied Health Department approval before it was entitled to obtain the release of a specific lot for a consideration of $600.00. Noncontradictory terms and conditions may be implied in a contract when the circumstances warrant it to effectuate the manifest intention of the parties. *Commercial Credit Corp. v. Nelson Motors, Inc.*, 247 S. C. 360, 147 S. E. (2d) 481 (1966). In *Commercial Credit Corp.*, the Supreme Court quoted with approval from 17A C.J.S. *Contracts* Section 328 (1963) as follows:

A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used and external facts, such as the surrounding circumstances; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face.

In the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason

and justice they should do in order to carry out the purpose for which the contract was made.

* * *

And from 17 Am. Jur. (2d) *Contracts* Section 255 (1964):

> The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made.

247 S. C. at 367, 147 S. E. (2d) at 484. After considering the note and the surrounding circumstances, we are satisfied that the trial judge reached the right decision on this point.

Southern also argues in its brief that to require it to obtain Health Department denial of septic tank permits before it may demand release of the lots for the sum of $600.00 would require it to do a futile thing, as Bryan and Brandon well knew in 1983 that the lots would not meet Health Department specifications. It refers to the testimony of a Health Department official who denied permits for two lots that were typical of the lots in question. We have reviewed this testimony. The sum and substance of the official's testimony was that many of the lots would not meet Health Department specifications, but he could not say how many. Surely, the opinion of this official can impute no notice to Bryan and Brandon that the fifty lots did not meet Health Department specifications.

Southern further asserts that since Bryan and Brandon did not respond to its January 1983 letter, and particularly the statement that the lots did not meet Health Department specifications, they may not do so in this action. This assertion is without merit. The record reflects that Southern stipulated at trial that the sufficiency of the tender was an issue in the case. Parties are bound by their trial stipulations. *Goodson v. Carolina Container Corp., Inc.*, 283 S. C. 575, 324 S. E. (2d) 67 (1984).

Finally, Southern claims error in the failure of the trial judge to award damages for lost profits and the cost of revamping improvements already made to the

subdivision. Since we have found that Bryan's and Brandon's refusal of the 1983 tender was proper, it follows that Southern is not entitled to damages resulting from that refusal. The inquiry remains, however, whether Southern is entitled to damages from the 1978 refusal of Bryan and Brandon to accept the 1978 annual payment which the Supreme Court found proper. The trial court based its finding that Southern was not entitled to damages on Southern's failure to prove its entitlement to a legal certainty. Since Southern's counterclaim for money damages is a legal cause of action, we need only determine if there is any evidence which reasonably supports the finding of the trial judge on this cause of action. *Snell v. Parlette*, 273 S. C. 317, 256 S. E. (2d) 410 (1979); *Mitchell v. Smyser*, 236 S. C. 332, 114 S. E. (2d) 226 (1960) (in this equitable action for partition of real property, Supreme Court found scope of review for determination of legal issue of lawful wife of the intestate was any evidence standard.) We have reviewed the record and find ample support for the findings of the trial judge.

Southern's president Craven testified the Company spent $60,000.00 to install roads and other improvements which are no longer usable. He testified further that this condition resulted from Southern's inability to get lots released from the mortgage. He estimated that it would take "at least that [$60,000.00] or—or more" to restore the improvements. He also testified that but for the failure of Bryan and Brandon to release the lots, Southern could have built a minimum of five houses in the subdivision each year with profits ranging from $30,000.00 to $35,000.00 per year. Southern presented no other evidence to support this testimony and Bryan and Brandon did not contradict this testimony.

The trial judge found "[t]he figures that Mr. Craven testified to at the trial did not have any basis or foundation and were purely speculative in nature." Our review of Craven's testimony reveals some inconsistencies, thus raising the issue of credibility. A judge's findings of fact in an action at law tried without a jury have the force of a jury's findings of fact. *Townes Associates Ltd. v. The City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). An appellate court will not ordinarily become involved in judging the credibility of witnesses. Such is a function of the

trier of fact. *Doe v. Asbury*, 281 S. C. 191, 314 S. E. (2d) 849 (Ct. App. 1984); *Melton v. Williams*, 281 S. C. 182, 314 S. E. (2d) 612 (Ct. App. 1984). Giving due deference to the consideration of credibility by the trial judge, we find substantial support for his failure to award monetary damages.

Additionally, we may affirm a trial court's ruling that is correct based upon any reason apparent from the record. *Peak v. Peak*, 283 S. C. 489, 323 S. E. (2d) 67 (Ct. App. 1984). It is clear from both Craven's testimony and the record that Southern made no effort to mitigate its damages. It seems unwise at best that Southern would risk losing a profit of $7,000.00 per house by refusing to pay an additional $650.000 for a lot release.[4] Finally, we note that the Supreme Court's decision which upheld the sufficiency of the tender only relates to ten lots. There is no evidence that between the 1978 tender and the 1983 Supreme Court decision, Southern sought to obtain release of other lots at any price.

Accordingly, the order of the trial court is

Affirmed.

GARDNER, J., and MENDENHALL, Acting J., concur.

---

[4] Craven testified Southern would have realized a profit of approximately $7,000.00 for each house it constructed in the subdivision.