1392

COLUMBIA EAST ASSOCIATES, a Limited Partnership, Respondent-Appellant v. BI-LO, INC., Appellant-Respondent.

(386 S. E. (2d) 259)

Court of Appeals

516

*Harvey G. Sanders, Jr.,* and *Natalma M. McKnew,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for appellant-respondent.*

*Thomas E. McCutchen* and *Herbert W. Hamilton* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for respondent-appellant.*

Heard May 9, 1989.

Decided Sept. 5, 1989.

SHAW, Judge:

Respondent-appellant, Columbia East Associates, sued appellant-respondent, Bi-Lo, Inc., alleging breach of a commercial lease agreement and violation of the South Carolina Unfair Trade Practices Act. Bi-Lo appeals the denial of its summary judgment motion and an order awarding Columbia East $400,000 on its breach of contract claim. Columbia East appeals an order directing a verdict for Bi-Lo on Columbia East's unfair trade practices claim. We affirm.

In 1975, Bi-Lo was one of the most popular supermarket chains in South Carolina and remains so now. Its ability to draw customers into a shopping center made Bi-Lo an attractive tenant. During this time, Bi-Lo signed a letter of intent which provided for the proposed lease of space in the Columbia East Shopping Center. Bi-Lo selected the primary tenant's position in the center of the parking lot and in the center of the traffic flow. Bi-Lo also participated in the layout of the Columbia East Shopping Center.

On June 30, 1975, Bi-Lo executed a lease for the premises. The lease was prepared by Bi-Lo using its standard form lease as provided for in the letter of intent. Bi-Lo considered the lease terms nonnegotiable. Under the agreement, Bi-Lo was to lease 30,000 square feet in the shopping center at an annual rental rate of $48,000 per year. The term of the lease ran from the day Bi-Lo opened its store until December 31, 1995. The lease provided, in part, as follows:

> The leased premises shall be used only for the operation of a supermarket (for the sale of groceries, meats and/or other items generally sold by supermarkets). No store or building or any part of the same, now or hereafter constructed in the Center (other than the building demised to Lessee) shall be used for the sale of health foods ..., delicatessen items, groceries, meats and/or other items generally sold by supermarkets, and no delicatessen and/or delicatessen department shall be operated in the Center without Lessee's written consent.

The lease further provided:
> Lessee may assign this Lease or sublet any part or all of the leased premises for the purposes set forth in this Lease for which said premises may be used. No sublease or assignment by Lessee shall relieve Lessee of any liability hereunder.

Two other tenants entered into lease agreements for space in the center which made specific provisions regarding the operation of Bi-Lo in the center. One required its lease be conditioned upon the execution of a lease of space to Bi-Lo. The other inserted a provision allowing cancellation of its lease if Bi-Lo ceased to operate. The trial judge held Bi-Lo was the anchor tenant in Columbia East Shopping Center.

In the fall of 1986, Bi-Lo was presented with an opportunity to relocate its Columbia East store to a vacant Kroger supermarket in an adjacent shopping center located 150-200 feet away. Bi-Lo performed a site analysis to determine the viability of relocation. The analyst, Mr. Schafer, stated in his deposition that the biggest advantage of relocation to the vacant Kroger would be "eliminating the competitor and preventing a competitor from taking over the Kroger." The written analysis itself mentions the elimination of competition twice and reflects this was an important factor in the decision of whether to relocate. The analysis recommended relocation. Mr. Schafer stated he did not consider the possibility the Columbia East store would be taken over by a competitor. Conversely, he assumed it would not be occupied by a competitor.

In October, 1986, Mr. Kapp, Columbia East's managing agent, contacted Bi-Lo's real estate manager, Mr. Adamson, after hearing a rumor that Bi-Lo was considering closing the Columbia East store and relocating to the Kroger location. On December 23, 1986, Bi-Lo gave official notice to Columbia East of its intent to close the store. Following receipt of this notice, Mr. Kapp again contacted Mr. Adamson regarding the closing of the store. Mr. Kapp testified, and the trial judge so found, that Mr. Adamson advised him a competing supermarket chain would not be an acceptable subtenant for the premises.

On February 21, 1987, Bi-Lo vacated the Columbia East premises and relocated to the vacant Kroger store in the adjacent shopping center. At the time of the hearing, the Columbia East store had remained vacant since Bi-Lo's relocation with no activity occurring on the premises. Bi-Lo continued to make rent payments on the Columbia East space but presented no proposed subtenant for the vacant store. The record discloses that while Bi-Lo executed an

agreement with a real estate company to market various premises which had been vacated by Bi-Lo, Bi-Lo directed the company to omit the Columbia East space from its advertising brochure. Approximately one month prior to the trial of this case, Bi-Lo instructed the company to include the Columbia East space in its brochure. Bi-Lo made no other effort to locate a subtenant for the Columbia East store.

The case went to trial before the judge, sitting without a jury. Following the hearing, the trial judge issued his order holding Bi-Lo had breached its lease agreement with Columbia East by its cessation of operation and the refusal to sublease to a competing supermarket chain damaged Columbia East in the amount of $400,000. The trial judge ordered judgment in that amount and Bi-Lo appeals. Columbia East appeals the directed verdict in favor of Bi-Lo on the unfair trade practices claim.

Once a contract is before the court for interpretation, the main concern of the court is to give effect to the intention of the parties. *Williams v. Teran, Inc.*, 266 S. C. 55, 221 S. E. (2d) 526 (1976). The courts, in attempting to ascertain this intention, will endeavor to determine the situation of the parties, as well as their purposes, at the time the contract was entered. *Klutts Resort Realty v. Down' Round Development*, 268 S. C. 80, 232 S. E. (2d) 20 (1977). The intention of the parties must be inferred from the whole agreement. *Martin v. Carolina Water Service, Inc.*, 280 S. C. 235, 312 S. E. (2d) 556 (Ct. App. 1984). If a writing, on its face, appears to express the whole agreement between the parties, parol evidence cannot be admitted to add another term thereto. However, where a contract is silent as to a particular matter, and ambiguity thereby arises, parol evidence may be admitted to supply the deficiency and establish the true intent. *U.S. Leasing Corp. v. Janicare, Inc.*, 294 S. C. 312, 364 S. E. (2d) 202 (Ct. App. 1988). For, generally, parol evidence is admissible to show the true meaning of an ambiguous written contract. *Klutts*, supra. Such a contract is one capable of being understood in more ways than just one, or an agreement unclear in meaning because it expresses its purpose in an indefinite manner. *Id.* When an agreement is ambiguous, the court may consider the circum-

stances surrounding its execution in determining the intent. *Williams*, supra. Where the contract is susceptible of more than one interpretation, the ambiguity will be resolved against the party who prepared the contract. *Id.*

Bi-Lo argues that, under the lease agreement, it can vacate the premises and leave the store empty as long as it continues to pay rent. Columbia East takes the position that Bi-Lo is required to either operate a supermarket or sublet to another for operation of a retail store consistent with the lease terms.[1] By the nature of their contentions, if the arguments of both Bi-Lo and Columbia East are strong, viable positions after a reading of the lease agreement, then the lease is, necessarily, susceptible of more than one interpretation, and is thus ambiguous.[2]

While certain terms of the lease are consistent with the proposition that the parties contemplated an operating supermarket, no provision either expressly requires Bi-Lo to assure continuous operation or permits it to vacate and leave the store empty. We are aware that it would be virtually impossible for a contract to encompass all of the many possibilities which may be encountered by the parties. Indeed, neither law, nor equity, requires every term or condition to be set forth in a contract. *Maccaro v. Andrick Development Corp.*, 280 S. C. 96, 311 S. E. (2d) 91 (Ct. App. 1984). Because this situation was left unaddressed in the lease, the court may look to the circumstances surrounding the bargain as an aid to ascertaining the intention of the parties. *Southern Realty and Construction Co. v. Bryan*, 290 S. C. 302, 350 S. E. (2d) 194 (Ct. App. 1986). In the absence of an express provision in the contract, the law will imply an agreement to do those things that according to reason and justice should be done to carry out the purpose for which the

---

[1] Columbia East also, as a second position, contends that if the lease is ambiguous, the evidence shows the intent of the parties was to require continuous operation.

[2] Although the trial judge found the lease was unambiguous and Bi-Lo was required under the terms to either operate a supermarket or sublease to another, he further found that, if the question of intent arose, the proffered testimony of both parties supported the court's conclusion. Bi-Lo has excepted to, and argued vehemently against the admission of this extrinsic evidence. We thus consider this as an alternate ruling of the trial judge and address the issue of ambiguity of the contract.

contract was made. *Commercial Credit Corp. v. Nelson Motors, Inc.*, 247 S. C. 360, 147 S. E. (2d) 481 (1966). With this in mind, we turn to extrinsic evidence in the record regarding the intent of the parties. Mr. Kelly, who was secretary-treasurer of Bi-Lo at the time the Columbia East lease was entered, testified that, although not involved in negotiation of the lease, his understanding of the intent of the lease was that Bi-lo would continue to operate under the lease unless the store becomes unprofitable. He further stated he understood that, if Bi-Lo closed the store, it would be required to find a tenant to take over the operation.

It is clear from the record that a major reason Columbia East entered the lease was the ability of Bi-Lo, as the anchor tenant, to draw customers to the shopping center as a whole. The use of one or more anchor tenants to bring customers to the smaller shops in a shopping center is a common practice. If the anchor tenant were permitted to leave the premises vacant, the landlord's purpose for signing the lease would be defeated. This case is no different.

Even more telling is the testimony of Mr. Maney, assistant to the president of Bi-Lo, who was involved in developing the standard lease used in this case. Mr. Maney testified the lease was intended to assure landlords that an *operating* supermarket would be maintained and, though Bi-Lo was not obligated to continue operation itself, it was obligated to sublease if Bi-Lo ceased operation. He further testified that paying rent on a vacant store was never contemplated in drafting the lease. We agree with the trial judge that the evidence produced through the testimony of Kelly and Maney showed the parties intended that an operating supermarket would occupy the leased space. The evidence of the parties' intent along with the terms of the lease agreement support the trial judge's finding of breach on the part of Bi-Lo.

We further find that the requirement of continuous operation is one of good faith. It is not only possible, but likely, that upon vacating the leased premises, some time would necessarily lapse before an acceptable subtenant could take over operation of the premises. However, the record shows Bi-Lo not only failed to make a sincere effort to find such a subtenant, but refused to sublease to a competing super-

market chain. This attitude changed only when faced with the impending litigation.

Bi-Lo further argues the trial judge erred in finding that Columbia East suffered $400,000 in damages as a result of the alleged breach. We hold a review of the record supports the finding of the trial judge.

Columbia East contends the trial judge erred in granting a directed verdict to Bi-Lo on its unfair trade practice cause of action. We disagree. To be actionable under the Unfair Trade Practices Act, an unfair or deceptive act or practice must have an impact upon the public interest. The act is not available to redress a private wrong where the public interest is unaffected. *Noack Enterprises v. Country Corner Interiors*, 290 S. C. 475, 351 S. E. (2d) 347 (Ct. App. 1986). Although Columbia East alleges the unfair or deceptive acts or practices of Bi-Lo impacted upon the public interest, we agree with the trial judge that the record simply will not support the allegation. Further, a deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the Unfair Trade Practices Act. *Key Co., Inc. v. Fameco Distributors*, 292 S. C. 524, 357 S. E. (2d) 476 (Ct. App. 1987).

We find all other issues raised by the parties to be manifestly without merit. S. C. Code Ann. § 14-8-250 (Supp. 1988).

Affirmed.

SANDERS, C. J., concurs in separate opinion.

LITTLEJOHN, Acting J., concurs.

SANDERS, Chief Judge (concurring):

On the issue of whether Bi-Lo breached the lease, I would affirm for a slightly different reason than the reason stated by the majority (or, perhaps, for the same reason, less elaborately stated). The lease required that "[t]he leased premises shall be used only for the operation of a supermarket." There is abundant evidence from which it can be inferred that Bi-Lo did not merely allow the premises to stand vacant but, in fact, affirmatively used the premises for a purpose not allowed by the lease; namely, as part of a scheme to stifle competition. The existence of the scheme,

and how the premises was used in carrying it out, can be inferred from the testimony of Mr. Schafer. Corroborating evidence is found in the testimony of Mr. Kapp as to what Mr. Adamson had advised him. (The testimony of both witnesses is adequately summarized in the opinion of the majority.) For this reason, I would affirm the conclusion of the trial judge that Bi-Lo breached the lease.