**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN E. WALTON,
Plaintiff-Appellant,

v.                                                                    No. 96-1242

WAL-MART STORES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
Henry M. Herlong, Jr., District Judge.
(CA-95-83-20-8)

Argued: January 27, 1997

Decided: March 18, 1997

Before WILKINSON, Chief Judge, and HAMILTON and
WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Henry Shumate Sullivan, III, ASHMORE, RABON &
SULLIVAN, P.A., Greenville, South Carolina, for Appellant. Jon
Bernard Comstock, Senior Corporate Litigation Counsel, Bentonville,
Arkansas, for Appellee. **ON BRIEF:** Thomas E. Dudley, III, Theo-
dore S. Stern, Jr., GRANT, LEATHERWOOD & STERN, Green-
ville, South Carolina, for Appellant. Charles S. Wuest, Corporate
Litigation Counsel, Bentonville, Arkansas; David M. Yokel, Dana C.

Mitchell, III, MITCHELL, BOUTON, DUGGAN, YOKEL,
MCCALL & CHILDS, Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John E. Walton (Walton)[1] brought this action against Wal-Mart
Stores, Inc. (Wal-Mart) for breach of a commercial lease agreement.
Specifically, Walton alleged that Wal-Mart violated the lease's
assignment and use clauses when it changed its operating format at
the leased premises from a Wal-Mart Discount Store to a Bud's
Warehouse Outlet (Bud's). The district court granted summary judg-
ment for Wal-Mart. After a thorough review of the briefs, record, and
pertinent caselaw, and after hearing oral arguments, we affirm the dis-
trict court's order.

I.

In 1972, Cozi Investments, Ltd. and Edwards, Inc. entered into a
commercial lease for a 60,000 square foot retail space in a shopping
center in Easley, South Carolina. In 1977, Edwards, Inc. assigned the
lease to Kuhn's Big-K Stores, which began operating a Big-K
Edwards discount department store on the premises. In 1980, the
Oates and Walton Partnership (the Partnership) bought the Easley
shopping center and replaced Cozi Investments, Ltd. as the lessor. In
the spring of 1981, Wal-Mart advised the Partnership that it planned
to purchase all of Kuhn's Big-K Stores' stock, thereby making
Kuhn's Big-K Stores a wholly owned subsidiary of Wal-Mart. More-
over, Wal-Mart planned to convert the Big-K Edwards store in the

_____

[1] John E. Walton is not related to Sam Walton, the founder of Wal-
Mart Stores, Inc.

shopping center into a Wal-Mart Discount Store provided certain amendments were made to the original lease.

On August 25, 1981, Kuhn's Big-K Stores, Wal-Mart, and the Partnership entered into a tripartite agreement, drafted by Wal-Mart, entitled "Amendment to Lease." In the recitals, Kuhn's Big-K Stores was designated "Lessee" and the Partnership was designated "Lessor." The Amended Lease retained the assignment clause of the original lease which prohibited the assignment, sublease, or vacation of the premises without the consent of the lessor. It also added a use clause whereby the lessee

> agreed that the Demised Premises being leased will be used by the Lessee in the operation of a discount department store, but Lessor agrees the store may be used for any lawful retail purpose not prohibited by or in conflict with any other existing lease at the [shopping center].

(J.A. at 53.) The lessee also agreed to pay a base yearly rent of $165,000, plus a percentage rent based on all sales on the leased premises exceeding $6 million per year. The lease was to continue until January 31, 1995.

Wal-Mart subsequently opened a Wal-Mart Discount Store, a division of Wal-Mart, on the leased premises. The store was an immediate success, its profitability increasing each year. In 1986, Walton became the sole owner of the shopping center and sole lessor under the lease agreement. By 1991, the store had adjusted gross sales in excess of $16 million, producing rental income of $144,000 for Walton, in excess of the annual rent.

In 1991, Walton learned that Wal-Mart planned to relocate its Wal-Mart Discount Store and substitute a Bud's Warehouse Outlet, another division of Wal-Mart, on the premises. In August 1992, Wal-Mart vacated its Discount Store, but immediately installed a Bud's. Bud's continued to pay the base rent required under the lease. Bud's, however, was not as successful as the Discount Store and grossed only $2.3 million during its first year of operation. As a result, Walton received no percentage rents. Bud's continued operations until the termination of the lease in January 1995.

3

In December 1994, Walton filed this action in state court against Wal-Mart seeking monetary damages, including lost percentage rents. Walton claimed that Wal-Mart breached both the assignment and use clauses of the Amended Lease when it vacated the premises and caused the lease to be transferred to Bud's. After removal to federal court based on diversity jurisdiction, the district court granted Wal-Mart's motion for summary judgment. Walton appeals.

II.

The grant of summary judgment is reviewed de novo using the same standard employed by the district court. See Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993). When the language of a contract is plain and unambiguous, its interpretation is a question of law that may be determined by the court on a motion for summary judgment. See id. (citing American Fidelity & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965)).

A.

Walton contends that Wal-Mart violated the assignment clause of the Amended Lease when Kuhn's Big-K Stores, a wholly owned subsidiary of Wal-Mart, assigned the lease to the parent corporation Wal-Mart, through its operating division Bud's, without his consent.[2] See, e.g., Reston Recreation Ctr. Assocs. v. Reston Property Investors Ltd. Partnership, 384 S.E.2d 607, 610 (Va. 1989) (holding that a transfer from a corporation to its subsidiary without the landlord's consent violates lease clause restricting assignments and subleases). The district court found, however, that no transfer of interest had occurred between corporate entities because "[t]he terms of the lease . . . clearly indicate that the intention of the parties was that Wal-Mart was the lessee, not [Kuhn's] Big K [Stores]." (J.A. at 726.) The district court concluded that Wal-Mart was the "lessee in fact." The district court based its decision on the following undisputed facts: (1) Wal-Mart made Kuhn's Big-K Stores a subsidiary, (2) Wal-Mart guaranteed payments under the lease, (3) the address of the lessee was

_____

[2] Kuhn's Big-K Stores Corporation was dissolved in 1994. Bud's began operating on the leased premises in August 1992.

4

changed in the Amended Lease to that of Wal-Mart, and (4) Kuhn's Big-K Stores actually operated as a Wal-Mart Discount Store.

Moreover, the district court determined that even if Wal-Mart was not the lessee in fact, the lease was impliedly assigned to Wal-Mart with Walton's consent. Therefore, because Bud's is an operating division of Wal-Mart, rather than a subsidiary, there simply was no transfer of interest from one corporate entity to another when Wal-Mart changed its operating format from a Wal-Mart Discount Store to a Bud's.

We agree with the district court that Walton acquiesced in an implied assignment of the lease from Kuhn's Big-K Stores to Wal-Mart by allowing Wal-Mart to possess the premises, first for its Wal-Mart Discount Store and then for its Bud's Warehouse Outlet, and by accepting lease payments from Wal-Mart from 1981 until 1995, thereby waiving any objection to the assignment of the lease. Thus, Wal-Mart became the lessee in fact. Walton's contrary argument, that Kuhn's Big-K Stores maintained its status as lessee until it impermissibly assigned the lease to Bud's, is negated by Walton's own actions. First, Walton brought suit against Wal-Mart, rather than Kuhn's Big-K Stores, alleging an improper assignment of the lease. In his complaint, Walton acknowledged that Wal-Mart was the lessee and argued that the subsequent assignment of the lease to Bud's, a wholly owned subsidiary of Wal-Mart, was a breach of the lease. Only after learning that Bud's was not a subsidiary, but merely a division of the parent corporation Wal-Mart, did Walton begin asserting that Kuhn's Big-K Stores maintained its status as lessee in the Amended Lease.

Furthermore, in various court documents, including his Complaint, Memorandum in Support of Motion for Summary Judgment, and brief to this court, Walton consistently states that Wal-Mart relocated its Wal-Mart Discount Store, thus recognizing that Wal-Mart, not Kuhn's Big-K Stores, was the lessee. Cf. Lucas v. Burnley, 879 F.2d 1240, 1242 (4th Cir. 1989) ("The general rule is that a party is bound by the admissions of his pleadings") (internal quotation marks omitted) (collecting cases); Elrod v. All, 134 S.E.2d 410, 416 (S.C. 1964) ("[P]arties to an action are judicially concluded and bound by [their pleadings] unless withdrawn, altered or stricken by amendment or

5

otherwise. . . . [A] party cannot subsequently take a position contra-dictory of, or inconsistent with, his pleadings."); Fisher v. South Car-olina Dep't of Health and Envtl. Control, 419 S.E.2d 794, 795 (S.C. Ct. App. 1992). Also, during oral arguments before this court, counsel for Walton conceded that Wal-Mart was the lessee. Accordingly, we conclude that there was no assignment of the lease or subletting of the premises from one corporate entity to another in violation of the lease agreement when Wal-Mart, the lessee in fact, simply altered its oper-ating format from a Wal-Mart Discount Store to a Bud's Warehouse Outlet, another operating division of Wal-Mart.

B.

Walton next asserts that Wal-Mart violated the use clause of the lease when it failed to maintain a "discount department store" on the premises. South Carolina caselaw, adhering to the general rule, dic-tates that "in the absence of an exclusion of other purposes, a lease for a specific purpose will be regarded as permissive instead of restrictive and does not limit the use of the premises by the lessee to such purposes." Chassereau v. Stuckey, 342 S.E.2d 623, 624 (S.C. Ct. App. 1986) (holding that a use clause stating property was "to be used primarily as an automobile dealership" was permissive); accord Forman v. United States, 762 F.2d 875, 880 (Fed. Cir. 1985) ("[A] lease provision [that] sets forth the use of the property, . . . absent a clear and specific indication that the landlord intended to limit the tenant's use of the property, is generally permissive and not restric-tive.") (collecting cases); Ewing v. Adams , 573 So.2d 1364, 1367 (Miss. 1990) ("As a general rule it may be said that a tenant is entitled to use leased premises for any lawful or valid purpose, without inter-ference on the part of the landlord, so long as such use is not forbid-den by any express provision of the lease or by some necessarily implied construction of the [instrument]."); Baron Brothers, Inc. v. Nat'l Bank of South Dakota, 155 N.W.2d 300, 303 (S.D. 1968) ("Generally, a tenant is entitled to use leased premises for any lawful or valid purpose without interference by the landlord, as long as the use is not forbidden by any express provisions or by some necessarily implied construction of the instrument.") (collecting cases); cf. Shropshire v. Prahalis, 419 S.E.2d 829, 830 (S.C. Ct. App. 1992) (finding use clause to be restrictive when lease contained explicit cov-enants that the premises would not be used for any purpose other than

6

the stated purpose). The use clause in this case placed no express restrictions on the lessee. On the contrary, although the clause allowed the premises to be used for a discount department store, it also explicitly provided that the premises could be used "for any lawful retail purpose." The district court correctly concluded that the use clause in this lease was permissive, rather than restrictive. Accordingly, Wal-Mart did not violate the provision since Bud's is unquestionably a lawful retail business and in fact is a discount department store.

Walton argues that when construing a use clause, the court must examine other provisions of the lease to ascertain the intent of the parties. Walton contends that the lease provision prohibiting the assignment of the lease or subletting of the premises, coupled with the use clause, gives rise to an implied obligation of continuous operation of a discount department store by Wal-Mart in the leased premises throughout the lease period. Walton relies primarily on two South Carolina cases, United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc., 413 S.E.2d 866 (S.C. Ct. App. 1992), and Columbia East Assocs. v. Bi-Lo, Inc., 386 S.E.2d 259 (S.C. Ct. App. 1989), in which the South Carolina Court of Appeals found that lessee companies breached their respective leases when they ceased operating their businesses in the leased premises, despite continuing to pay rent throughout the remainder of the lease term. Both cases are distinguishable, however, and therefore are not dispositive of the case on appeal.

In United Dominion, the South Carolina court, interpreting a lease containing a use clause virtually identical to the one at issue in this case,[3] found that Wal-Mart violated the terms of its lease when it relocated before the end of the lease term and replaced its discount

_____

[3] The lease in United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc., 413 S.E.2d 866 (S.C. Ct. App. 1992), provided, in pertinent part:

> It is understood and agreed that the [d]emised[p]remises being leased will be used by [Wal-Mart] in the operation of a discount department store, but [United] agrees the store may be used for any lawful purpose.

Id. at 868 (alterations in original).

7

department store with a storage facility. The court concluded that "the language of the lease agreement . . . plainly require[d] Wal-Mart to operate a `discount department store' on the premises." 413 S.E.2d at 868. This determination, however, was based only in part on the use clause. Rather, the court found that the lessor based "its [breach of contract] action" on the "best efforts" clause of the lease whereby Wal-Mart agreed to "operate its business in the demised premises, with due diligence and efficiency in an effort to produce all of the gross sales which may be produced by such manner of operation." Id. at 868. This language, the court reasoned, required Wal-Mart "to operate `its business,' a discount department store, continuously on the leased premises." Id. at 869.

United Dominion, however, is readily distinguishable from this case. First, the Amended Lease here does not contain any provisions requiring Wal-Mart to act with "due diligence and efficiency in an effort to" maximize profits. And second, even if United Dominion required Wal-Mart to operate a discount department store on the leased premises, we conclude that Bud's is, as a matter of law, a "discount department store" as that term is defined in United Dominion. The South Carolina court defined "discount department store" as "a large retail establishment where various kinds of goods, wares, and merchandise arranged in departments are sold at reduced prices." United Dominion, 413 S.E.2d at 869. None of the evidence submitted by Walton is contrary to the district court's finding that Bud's fits into this broad category of businesses. Rather, all the evidence submitted indicates that Bud's, although not a Wal-Mart Discount Store, was a lawfully operating discount department store. Accordingly, Wal-Mart did not breach, but fully complied with, the use clause when it opened a Bud's on the leased premises.

Moreover, the Amended Lease has limiting language contrary to an intent to require continuous operation of a discount department store on the premises. In paragraph 6 the lessee agreed "to operate its business and to keep open its doors to the mall during normal business hours for a period of eighteen (18) months." (J.A. at 54.) However, if the lessor failed to achieve a fifty percent occupancy rate by the end of the 18 months, or anytime thereafter, the lessee was no longer required to remain open. This provision is inconsistent with an implied obligation of continuous operation.

8

In Columbia East, the South Carolina court held that Bi-Lo breached its lease agreement with the lessor when it vacated the premises, leaving them "dark," and relocated to an adjacent location despite continuing to pay rent due under the lease. The Bi-Lo lease contained a use clause providing that "[t]he leased premises shall be used only for the operation of a supermarket." 386 S.E.2d at 260. It also contained a clause allowing the assignment of the lease or subletting of the premises. Id. The court construed these two provisions together, along with the implied covenant of good faith and fair dealing inherent in every South Carolina contract, to conclude that Bi-Lo was obligated to continuously operate a supermarket on the premises or sublet to another supermarket chain, and that its refusal to do so was a breach of the lease. See id. at 262-63. The court found that "a major reason Columbia East entered the lease was the ability of Bi-Lo, as the anchor tenant, to draw customers to the shopping center as a whole." Id. at 262. The court reasoned that if Bi-Lo "were allowed to leave the premises vacant, the [lessor's] purpose for signing the lease would be defeated." Id.

The state court found that Bi-Lo breached the lease because it vacated the premises and refused to sublease to a competing supermarket. See id. at 263. In the instant case, however, Wal-Mart did exactly what the court in Columbia East concluded Bi-Lo should have done -- it found a replacement tenant to operate the same type of business on the premises. Wal-Mart neither left the premises "dark" nor prevented in bad faith a competitor from using the leased premises. Rather, it placed a member of another operating division of Wal-Mart into the leased premises. Bud's, while not as profitable as the Wal-Mart Discount Store, operated as an anchor tenant in the shopping center for nearly two years, earning over two million dollars its first year, before closing its doors at the end of the original lease term. Therefore, neither United Dominion nor Columbia East support Walton's claims that Wal-Mart violated the lease agreement when it relocated its Wal-Mart Discount Store and substituted a Bud's Warehouse Outlet in the leased premises.

III.

Because we conclude that Walton failed to show that Wal-Mart breached any provision of the lease agreement, we affirm the district

9

court's grant of summary judgment in favor of Wal-Mart. Therefore, we need not address the remaining issues raised by the parties on appeal.

AFFIRMED

10