528 S.E.2d 424

**TRUCK SOUTH, INC., Petitioner,**

v.

**Sudhir D. PATEL, Respondent.**

No. 25072.

Supreme Court of South Carolina.

Heard Jan. 20, 2000.

Decided Feb. 22, 2000.

A. Cranwell Boensch, of Walterboro, and James B. Richardson, Jr., of Richardson & Birdsong, of Columbia, for petitioner.

James F. Walsh, Jr., of Orangeburg, for respondent.

TOAL, Justice:

Truck South, Inc. ("Truck South") appeals the Court of Appeals' decision to reverse the trial court and remand for a new trial based upon improper venue. We reverse the Court of Appeals.

## FACTUAL/PROCEDURAL BACKGROUND

On September 13, 1993, Sudhir D. Patel ("Patel") contracted with Truck South to purchase real estate located near the intersection of I–95 and State Highway 63 in Colleton County, South Carolina for $136,745.00. Patel was to receive title upon completion of the payment of the purchase price in installments. The sales contract contained provisions under the "Covenants of Seller" and "Conditions and Contingencies of Sale" that mandated the property be zoned for commercial purposes permitting the construction of a two-story motel containing not less than 80 units. Truck South was also obligated under the contract to convey the property "free from encumbrances."

After the execution of the contract, Patel obtained a franchise agreement from Hampton Inn and began initial design of a motel to be constructed on the site. Patel hired an architecture firm to design and construct the motel. Prior to

construction, the architecture firm discovered water on the property and requested an inspection by a federal agent. In a hearing following the investigation, part of the property was declared to be federally-protected wetlands. At the time of contracting, neither party knew the property contained wetlands. Because of the wetlands designation, Patel could not construct a motel on the property and the conditions of the Hampton Inn franchise agreement could not be met.

On April 20, 1995, Patel notified Truck South by letter that he refused to make additional payments on the land and demanded the refund of all payments made up to that date. Truck South brought an action in Colleton County seeking specific performance of the sales contract or, in the alternative, damages. Patel moved for a change of venue to Orangeburg County, the county of his residence. The trial judge denied this motion and the case was tried in Colleton County where the property was located. Patel filed an answer asserting: (1) the trial court should deny the relief requested by Truck South because the wetlands designation on the property is an encumbrance rendering title to the property unmarketable; and (2) the trial court should rescind the contract because it was premised on a unilateral or mutual mistake of fact. The trial court rejected these arguments and granted summary judgment to Truck South on all issues.

Patel appealed and the Court of Appeals reversed the trial court and remanded the case for a new trial, holding that venue was proper in the county of Patel's residence pursuant to S.C.Code Ann. § 15–7–30 (1976). *Truck South, Inc. v. Patel*, 332 S.C. 222, 503 S.E.2d 774 (Ct.App.1998) (Hearn, J., dissenting). The Court of Appeals reasoned that "[b]ecause the object of Truck South's action for specific performance of the land sales contract is essentially recovery of the purchase price under the contract, a money judgment, and the judgment does not directly operate to change title, we hold Patel has the right under section 15–7–30 of the South Carolina Code to defend this action in the county of his residence." *Id.* at 324, 503 S.E.2d at 780. Truck South appeals on the following issues:

I. Is an action for specific performance of a real estate contract properly brought in the county where the property is situated or where the defendant resides?

II. Did the trial court err in granting summary judgment for specific performance to Truck South, the vendor?

LAW/ANALYSIS

### I. Venue

██ Truck South argues that a vendor's action for specific performance of a real estate contract is a local action placing venue in the county where the property is located. We agree.

██ According to the plain language of S.C.Code Ann. § 15–7–10(1) (1976), the proper venue for this action is in Colleton County, the county where the property is located. Section 15–7–10 provides in part:

> Actions ... must be tried in the county in which the subject of the action or some part thereof is situated...:
>
> (1) For the recovery of real property or of an estate or interest therein or for the *determination in any form of such right or interest* and for injuries to real property. (emphasis added).

In all other cases, proper venue is in the county where the defendant resides at the time of the commencement of the action. S.C.Code Ann. § 15–7–30 (1976). Section 15–7–10(1) applies to any action that requires a determination in any form of such "right or interest" in real property. An action for specific performance of a real estate contract affects rights and interests in real property because it ultimately determines who holds title to the property.

In *Barrow v. Gowdy,* 114 S.C. 122, 103 S.E. 477 (1920), we specifically held that venue of an action for specific performance is proper in the county where the land is located, notwithstanding the defendant was a resident of another county. Because the action in *Barrow* was one to determine the interest of the plaintiff in real property situated in Clarendon County, the action was tried in Clarendon County where the land was situated. *Id.* The Court of Appeals attempted to distinguish *Barrow* by arguing that the plaintiff in *Barrow* was a vendee, while the plaintiff in the instant case is a vendor. The Court of Appeals found there was a critical distinction between an action for specific performance of a contract for the sale of land brought by the seller and an

action brought by a buyer. According to the Court of Appeals, a seller is not asking for the "property or an order directly affecting title to the property; rather, he is seeking the purchase price of the property due under the contract." *Truck South, Inc.*, 332 S.C. at 228, 503 S.E.2d at 777.

The rule established in *Barrow* controls in this case. In *Barrow*, a blanket rule was established that applies to all actions for the specific performance of a land sales contract. This Court did not address the fact that the action in *Barrow* was made by a purchaser rather than a seller, or that the application of the venue statute would depend upon which side was seeking specific performance. The Court of Appeals determined that Barrows was a purchaser by reading the record on appeal on file with the South Carolina Supreme Court. However, the actual opinion in this case does not make any such distinction. Nothing in the opinion limits its holding to actions commenced only by buyers. The *Barrows* opinion contains no reasoning to support the Court of Appeals' holding because it does not distinguish between a buyer and a seller in terms of specific performance.

■ The Court of Appeals concluded that *Barrows* was not controlling in the instant case because of the nature of the relief sought by Truck South. According to the Court of Appeals, Truck South is not asking the court to determine its rights in the real estate, but is simply seeking the money due under the contract. However, the character of an action is primarily determined by the allegations of the complaint. *Seebaldt v. First Fed. Sav. & Loan Ass'n*, 269 S.C. 691, 239 S.E.2d 726 (1977). Truck South's Amended Complaint seeks to require Patel to specifically perform under the contract, money damages were only requested in the alternative. *See Truck South, Inc.*, 332 S.C. at 236, 503 S.E.2d at 782 (Hearn, J., dissenting). While the transfer of money would occur if specific performance was ordered, Truck South's request is not solely for a "money judgment," it is an action to compel Patel to perform so that title, an interest in the real estate, can transfer. As Judge Hearn stated in her dissent, "Any payment received by Truck South in exchange for the property is a necessary accompaniment to the conveyance of the property and does not alter the true nature of the lawsuit." *Id.* at 236, 503 S.E.2d at 782; *see also First Nat. Co. v. Strak,*

148 S.C. 410, 418, 146 S.E. 240, 242 (1929) (refusing to recharacterize an action for foreclosure as an action for debt).

■ Public policy does not support having a different venue rule depending upon whether the buyer or the seller seeks specific performance. Strong public policy supports a rule that requires an action for the specific performance of a land sales contract to be litigated in the county where the land is located. That is where the records are located, where the title is recorded, where *lis pendens* are filed, and where the actual property is situated. Judge Hearn correctly noted in her dissent that if this case had been transferred to Orangeburg County, the county of Patel's residence, a person searching title would be placed under the burden of searching records in both Colleton and Orangeburg County. The policy reasons for requiring an action for specific performance to be brought in the county where the property is located support the application of section 15–7–10(1) to both buyers and sellers. There is no logical reason why the rule should distinguish between buyers and sellers. The Court of Appeals cites authority from other jurisdictions to support their decision, including cases from Minnesota, Florida, and California.[1] *See generally* 77 Am.Jur.2d *Venue* § 20 (1997) ("statute which make local actions involving title to real estate do no apply to action in which the question of title is merely incidental to the main controversy"); C.R. McCorkle, Annotation, *Venue of Action for Specific Performance of Contract Pertaining to Real Property*, 63 A.L.R.2d 456 (1958).[2] However, we find it is more reasonable, and more in line with this Court's prece-

---

1. Specifically, the Court of Appeals cites *Minnesota ex rel. Nyquist v. District Court of Swift County*, 164 Minn. 433, 205 N.W. 284 (1925); *Minnesota ex rel. D.S.B. Johnston Land Co. v. District Court of Pennington County*, 138 Minn. 336, 164 N.W. 1014 (1917); *McMullen v. McMullen*, 122 So.2d 626 (Fla.Dist.Ct.App.1960); *Work v. Associated Almond Growers*, 76 Cal.App. 708, 245 P. 790 (1926). Other states differ as to where venue should be for a specific performance action. However, only California recognizes the "venue split" that the Court of Appeals advocates. Only California has held that venue depends on whether the vendor or the vendee brings the action.

2. Judge Hearn's dissent correctly notes that the Annotation cites the *Barrow* decision twice to illustrate that in South Carolina the proper venue of an action for specific performance of a contract pertaining to real property is the county where the property is located.

dent in *Barrow*, to have a rule where actions involving real estate are local actions that are litigated in the county where the land is situated.

## II. Summary Judgment

Truck South argues that the trial court's decision to grant summary judgment should be affirmed because no material issues of fact were in dispute concerning the encumbrances on the land, unilateral mistake, or mutual mistake. We agree.

### A. Encumbrances

A trial judge should deny summary judgment where there is a genuine issue as to any material fact. *Davis v. Satterfield Construction Co.*, 263 S.C. 356, 210 S.E.2d 596 (1974). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant. *Williams v. Chesterfield Lumber Co.*, 267 S.C. 607, 230 S.E.2d 447 (1976).

Truck South covenanted in the "Contract of Sale" to convey the property to Patel "free from encumbrances." After the sales contract was entered into, an architecture firm discovered wetlands on the property. Patel sought to rescind the sales contract arguing the wetlands designation acts as an encumbrance on the property that renders the title unmarketable. An encumbrance is a right or interest in the land granted "which may subsist in third persons to the diminution in value of the estate although consistent with the passing of the fee." *Martin v. Floyd*, 282 S.C. 47, 51, 317 S.E.2d 133, 136 (Ct.App.1984) (quoting 21 C.J.S. *Covenants* § 142); *see also* BLACK'S LAW DICTIONARY 547 (7th ed. 1999) ("A claim or liability that is attached to property or some other right that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest."). The Court of Appeals in *McMaster v. Strickland*, 305 S.C. 527, 409 S.E.2d 440 (Ct.App.1991) held that the designation of property as wetlands and the resulting possibility that a purchaser would not be able to use the property for the purpose he intended did not establish that the vendor was incapable of providing marketable title. According to the Court of Appeals, "This

simply boils down to a case of the purchaser taking a calculated business risk. The fact that he is dissatisfied with the results will not excuse him from the contract without some condition stated in the contract allowing his refutation of the same." *Id.* at 530, 409 S.E.2d at 442; *see also Martin,* 282 S.C. at 52, 317 S.E.2d at 136 (Ct.App.1984) ("While marsh or water might be a burden upon property, it is certainly not a lien, easement, or a right existing in a third party."). Because the wetland designation does not render the title unmarketable, Patel cannot rescind the contract based upon an encumbrance.

## B. Unilateral Mistake

In order to rescind an instrument on the grounds of mistake, the proof must be by evidence that is clear and convincing. *Smothers v. Richland Memorial Hosp.,* 328 S.C. 566, 493 S.E.2d 107 (Ct.App.1997) (citing *Blanton v. Blanton,* 284 S.C. 250, 325 S.E.2d 340 (Ct.App.1985)). The Record on Appeal contains no evidence of unilateral mistake because neither party knew of the wetland condition prior to contracting nor that the property might be unsuitable for construction. Unilateral mistake is not by itself grounds for rescinding the contract unless the mistake has been induced by fraud, deceit, misrepresentation, concealment, or imposition of the party opposed to rescission, without negligence on the part of the party claiming rescission, or where mistake is accompanied by very strong and extraordinary circumstances which would make it a great wrong to enforce the agreement. *See State Farm Mut. Auto. Ins. Co. v. Turner,* 303 S.C. 99, 399 S.E.2d 22 (Ct.App.1990).

Patel adduced no evidence demonstrating Truck South knew prior to contracting that the property was wetlands and therefore unsuitable for construction. Patel's attorney drafted the sales contract and could have inserted a provision into the contract making the sale of the property contingent on its suitability as a construction site. In fact, Patel's attorney inserted provisions in the sales contract to deal with other environmental problems.[3] Because there was

---

3. Under the "Covenants of Seller and Conditions and Contingencies of Sale," Patel's attorney inserted a provision requiring a Phase I Environ-

no misrepresentation or fraud concerning the property's wetlands designation, summary judgment was properly granted by the trial judge on the issue of unilateral mistake.

### C. Mutual Mistake

 Contracts may be rescinded based upon mutual mistake where the mistake is in reference to facts upon which the contract is based, or where there is an omission or insertion of some material element affecting the subject matter or terms and stipulations of the contract, inconsistent with the true agreement of the parties. *King v. Oxford,* 282 S.C. 307, 318 S.E.2d 125 (Ct.App.1984). The mistake must be common to both parties and, by reason of it, each has done what neither intended. *Chet Adams Co. v. James F. Pedersen Co.,* 308 S.C. 410, 418 S.E.2d 337 (Ct.App.1992). The evidence in this case does not indicate that the contract failed to reflect the parties' intentions, rather the sales contract failed to include a provision protecting Patel from unforeseen circumstances. Truck South did not know or represent to Patel that the land was free of wetlands or was suitable for the intended purpose. Patel bargained for protection against certain contingencies that would render the land unsuitable, but none of these contingencies included a wetlands designation. Therefore, there was no mutual mistake and the loss falls to Patel under the contract.

### CONCLUSION

Based on the foregoing, the decision of the Court of Appeals is **REVERSED** and the trial court's grant of summary judgment is **AFFIRMED**.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

mental Audit to determine if any environmental clean-ups were necessary. This provision requires the vendor to pay part of the cost for any environmental clean-up. It would appear that Patel was aware that the sales contract could be drafted to protect him from certain environmental problems.