555 S.E.2d 410

**Eric L. YOUNG, Sr., Individually, and as Personal Representative of the Estate of Mabellean Young and Eric L. Young, Jr., Respondents,**

**v.**

**Harvey L. COOLER and South Carolina Farm Bureau Mutual Insurance Company as Underinsured–Motorist–Coverage Insurer, Defendants, of whom South Carolina Farm Bureau Mutual Insurance Company as Underinsured–Motorist–Coverage Insurer is Appellant.**

**No. 3400.**

Court of Appeals of South Carolina.

Submitted Oct. 1, 2001.

Decided Nov. 5, 2001.

George H. O'Kelley, Jr., of Beaufort; and Robert J. Thomas, of Rogers, Townsend & Thomas, of Columbia, for appellant.

Dragana Davidovic, of Beaufort, for respondents.

HEARN, Chief Judge:

South Carolina Farm Bureau Mutual Insurance Company (Farm Bureau), as the underinsured motorist carrier, appeals a circuit court order enforcing an alleged settlement agreement between itself and Eric L. Young, Sr. and Eric L. Young, Jr. (the Youngs). We reverse.

## FACTS

This case arose from a car accident between Harvey L. Cooler and the Youngs. Allstate Insurance Company (Allstate) provided primary liability coverage for Cooler, and Farm Bureau provided the Youngs' underinsured motorist (UIM) coverage.

Cooler's counsel indicated to Farm Bureau in written correspondence and answers to interrogatories that Cooler's applicable policy limits were $15,000/$30,000. The Youngs' attorney also informed Farm Bureau's attorney that Cooler's applicable policy limits were $15,000/$30,000, and that the case could be settled for the Youngs' policy limits because Cooler's liability limits were significantly lower than the Youngs' damages.

On the day before trial, Farm Bureau's attorney informed the Youngs' attorney that Farm Bureau would pay $7,000 for Eric Young, Jr.'s claim and $8,000 for Eric Young, Sr.'s claim ($15,000 total). His letter stated "this would be paid regardless of the outcome of your settlement negotiations or trial" and further stated that he would order the drafts and prepare a UIM release. No evidence in the record indicates that the Youngs' counsel accepted any perceived offer made by Farm Bureau.

Later that afternoon, Cooler's attorney discovered he was mistaken and that Allstate's coverage limits were $50,000/$100,000 instead of $15,000/$30,000. He informed Farm Bu-

reau's attorney of the mistake, who then contacted the Youngs' attorney and verbally withdrew the $15,000 offer. On the morning of trial, he sent a fax indicating that Farm Bureau withdrew its offer because he was "misinformed and did not have the correct facts" regarding Allstate's coverage limits.

The case proceeded to trial resulting in a jury verdict of $20,000 for Eric Young, Sr. and $15,000 for Eric Young, Jr. The trial judge subsequently granted the Youngs' motion to enforce the alleged settlement between themselves and Farm Bureau. This appeal followed.

## LAW/ANALYSIS

Farm Bureau argues the trial judge erred in enforcing the alleged settlement agreement. We agree.

An agreement between counsel affecting the proceedings in an action is not binding unless a consent order or written stipulation is signed by counsel and entered in the record or the agreement is made in open court and noted for the record. Rule 43(k), SCRCP. This rule applies to settlement agreements. *Ashfort Corp. v. Palmetto Constr. Group, Inc.*, 318 S.C. 492, 494, 458 S.E.2d 533, 534 (1995). In *Ashfort*, the court held that the purpose of rules like Rule 43(k) is to prevent disputes concerning the existence and terms of agreements and to relieve the court of the necessity of determining such disputes. *Id.* at 495, 458 S.E.2d at 535 (quoting 83 C.J.S. *Stipulations* § 4 (1953)); *see also Reed v. Associated Investments of Edisto Island, Inc.*, 339 S.C. 148, 152, 528 S.E.2d 94, 96 (Ct.App.2000).

The requirements of Rule 43(k) were not met here. The record contains no evidence of a consent order, written stipulation, or agreement made in open court and noted on the record.

The Youngs argue that the letter from Farm Bureau's attorney confirmed the settlement and how it would be executed. We disagree. The letter is more in the nature of an offer or preliminary settlement negotiations than an agreement. In it, Farm Bureau's attorney said that he had been able to convince his client to pay $7,000 for Eric Young, Sr. and

$8,000 for Eric Young, Jr. Furthermore, he indicated he would "go ahead and order the drafts and prepare a UIM release." This language indicates that the letter was not intended to be the final written documentation of any agreement, but instead that further paperwork was needed to finalize an agreement.

■ The trial judge's order references the Youngs' intent to enforce the agreement pursuant to 43(k) and that they intended to be bound regardless of the trial outcome. However, even if the Youngs intended to be bound and attempted to announce to the court that a settlement had been reached, the requirements of 43(k) were not met. In *Widewater Square Associates v. Opening Break of America, Inc.*, 319 S.C. 243, 244, 460 S.E.2d 396, 396 (1995), the parties told the judge they reached a settlement and the judge signed a form order indicating a settlement had been reached. On appeal, the court held, "Even if we were to find that the form order at issue here reflected a settlement, such settlement would not be enforceable since it is neither admitted by respondents nor has it been executed." *Id.* at 245, 460 S.E.2d at 397. Here, Farm Bureau objected to the Youngs' motion to enforce the purported settlement. Thus, the trial judge erred in granting the motion.

■ We need not reach the question of whether the agreement is subject to rescission based on mutual mistake because we do not find an enforceable agreement. Contracts may be rescinded based upon mutual mistake of fact upon which the contract is based. *Truck South, Inc. v. Patel*, 339 S.C. 40, 50, 528 S.E.2d 424, 429 (2000). The mistake must be common to both parties and cause each to do what neither intended. *Id.*

In the present case, there was a mutual mistake because both parties believed the primary carrier had limits of $15,000/$30,000. The trial judge found in his order that "all parties were laboring under the mistaken belief that the Defendant's primary coverage was only $15,000/$30,000." Furthermore, both parties acted based on these limits. The Youngs' attorney indicated this in a letter to Farm Bureau's attorney stating: "[t]aking into consideration that the liability policy limit is so low, the above-referenced case can be settled with the Youngs' underinsurance carrier for the Young's policy

limit." Moreover, the UIM carrier's withdrawal of its offer on learning the correct policy limits shows it based its offer on the incorrect information. Thus, if an agreement had existed, we believe it would have been subject to recission.

Accordingly, the trial court's enforcement of the settlement agreement is

**REVERSED.**

CURETON and HOWARD, JJ., concur.