609 S.E.2d 531

**BRENCO, a General Partnership, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent.**

No. 3926.

Court of Appeals of South Carolina.

Heard Oct. 12, 2004.

Decided Jan. 24, 2005.

Rehearing Denied March 17, 2005.

---

138

Howell V. Bellamy, Jr. and Douglas M. Zayicek, both of Myrtle Beach, for Appellant.

John B. McCutcheon, Jr., Mary Ruth M. Baxter, and Arrigo P. Carotti, all of Conway, for Respondent.

STILWELL, J.:

Brenco brought this action against the South Carolina Department of Transportation (SCDOT), seeking deed rescission and claiming inverse condemnation. The trial court refused to rescind the deed and found Brenco failed to prove damages related to the inverse condemnation. We affirm in part, reverse in part, and remand.

## BACKGROUND

Brenco owns property located along Highway 501 in Horry County. The property was formerly the site of a Brendle's store, which closed in 1997. In 1998, SCDOT purchased 6,689 square feet of Brenco's parking lot in order to build a frontage road. The negotiations and deed referenced aspects of SCDOT's August 18, 1993 road plans for development of the frontage road including the creation of "controlled access facilities" as needed.

After initially alerting them of the project, SCDOT's appraiser, Clyde Ratchford, met with Brenco representatives at the property and provided them with a plan sheet. Although Ratchford admitted the plans could be confusing, the plan sheet showed the property's direct access to Highway 501 would be eliminated and, after construction, access would be to the frontage road. The plan sheet provided to Brenco also was narrow in scope and did not show the plans related to the nearby intersection of George Bishop Parkway and Highway 501, an original alternate means of accessing Brenco's property from the highway. According to Ratchford, the plans

indicated the grade of the road, and thus the property's visibility from the highway, would remain unchanged.

The appraisal valued the property taken at $34,700. A diagram attached as an exhibit to the appraisal showed only the property and the portion being taken for the frontage road. It did have an indication of the existing access point, which originally led to Highway 501, but did not specifically show any proposed change. However, language in the appraisal information indicated access would be to the frontage road. Brenco accepted the appraisal and agreed to sell the 6,689 square feet for $34,700.

The final project was completed pursuant to updated 2000 plans instead of the 1993 plans. Rather than being left at grade, Highway 501 was elevated, rendering Brenco's property less visible from the highway.

Brenco then brought this action to rescind the deed on the ground of negligent misrepresentation or unilateral or mutual mistake. Additionally, Brenco sought damages for inverse condemnation.

At trial, Brenco representatives maintained they knew nothing of their loss of access directly onto Highway 501. They asserted they were led to believe they would retain access across the frontage road. However, at least one representative admitted no one asked about access to and from Highway 501 onto the property. Additionally, Brenco questioned whether SCDOT knew about the change in grade or the possibility of such a change and failed to alert Brenco during the 1998 negotiations.

Ratchford indicated he never told Brenco representatives they would retain access to Highway 501. He maintained he showed them the portion of the plan sheet covering their property, which showed the elimination of direct access and provided access to their property only onto the frontage road. In addition, SCDOT offered testimony that although grade studies were being conducted, they learned the project would require elevating the road only after concluding the Brenco transaction.

Brenco offered testimony of two experts regarding the condition and value of the property. Engineer Steve Powell

testified the highest and best use for the property was dramatically and negatively impacted as a result of the change in grade of the road and the elimination of direct access. Appraiser Jim Jayroe testified the property would no longer be usable for retail space, but would instead be classified as light industrial. He testified the negative change in value of the property from before the original taking (the 1998 deed) until after the completion of the project was approximately $1.5 million. However, when asked for a figure of the monetary damage between the 1993 plans and the 2000 plans, he responded: "I don't know."

A second appraiser for SCDOT, Woodrow Willard, testified there was no change in the property's value after Brenco deeded the frontage. He testified any change in grade of the road—the only change he found subsequent to the signing of the deed—was offset by improved access to the property through the use of the frontage road.

In its first order, the trial court refused to rescind the deed, citing Brenco's failure to prove any of its alleged grounds. As to mistake, the court concluded although Brenco representatives may have had an incorrect impression of what access the property would have to Highway 501 after the conveyance, the documents they received from SCDOT established the property would no longer enjoy direct access to the highway. The court also found SCDOT was not then aware the highway's grade would change and thus there was no basis to rescind the deed for negligent misrepresentation.

The court did not dispose of the inverse condemnation action in its first order. Instead, the court sent a letter to counsel indicating it was struggling with the issue of damages and requested a conference on the issue. At the conference, the court considered taking additional testimony regarding damages, and counsel for both parties agreed the court could reopen the record to receive additional testimony. Brenco later moved to reopen the case to offer additional evidence of damages. In a memorandum in support of the motion, Brenco's counsel noted the trial court mentioned during the damages conference that it wanted to hear specific testimony as to the changes between the August 18, 1993 plans and the 2000 implemented plans.

The court later issued an order in which it concluded Brenco failed to establish any damages necessary to prove an inverse condemnation as a result of the deviation from the 1993 to the 2000 plans. The court found Brenco's evidence of monetary damages related solely to the inverse condemnation deficient. Consequently, the court found the only evidence on damages resulting from the change in grade was from SCDOT's appraiser who opined that any damage resulting therefrom was offset by improved access. The court also declined to reopen the case for additional testimony on the issue. Brenco filed motions for reconsideration of both of the court's orders, which were denied after hearings.

## DISCUSSION

### I.  Deed Rescission

Brenco argues the trial court erred in refusing to rescind the deed. We disagree.

An action to set aside a deed is a matter in equity. *See Bullard v. Crawley,* 294 S.C. 276, 278, 363 S.E.2d 897, 898 (1987). On appeal in an equity action, we may find facts in accordance with our own view of the evidence, but are not required to disregard the trial court's findings. *Pinckney v. Warren,* 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001). Moreover, our scope of review does not relieve the appellant of its burden to demonstrate the court's findings were in error. *Id.* at 387–88, 544 S.E.2d at 623.

### A.   Mistake

We find no basis for rescinding the deed on the ground of unilateral or mutual mistake.

To rescind an instrument on the ground of mistake, the evidence must be clear and convincing. *Truck South, Inc. v. Patel,* 339 S.C. 40, 49, 528 S.E.2d 424, 429 (2000). To rescind an instrument on the ground of unilateral mistake, the mistake must be accompanied (1) by proof it was induced by fraud, deceit, misrepresentation, concealment, or imposition of the opposing party and without negligence on the part of the party seeking rescission, or (2) by very strong and extraordinary circumstances which would make it a great wrong to enforce the agreement. *Id.*

■ A contract may be rescinded on the ground of mutual mistake where the parties have made a common mistake of fact causing each to do what neither intended. *Young v. Cooler,* 347 S.C. 362, 366, 555 S.E.2d 410, 412–13 (Ct.App. 2001).

At trial, Brenco maintained two primary grounds for mistake: (1) the loss of direct access to Highway 501 from the property and (2) the change in the grade of the road. They asserted they were led to believe they would retain access across the frontage road directly onto Highway 501. However, at least one representative admitted no one asked about access to and from Highway 501 onto the property. The deed, which references the 1993 plans, specifies the consideration paid to Brenco was for the "6,689 square feet of land, and all improvements thereon, if any, *including rights of access as may be needed for controlled access facilities.*" (Emphasis added.) Although they argue SCDOT's representative covertly put this language into the deed, they do not deny they had an opportunity to review the deed. Additionally, SCDOT's appraiser testified he showed Brenco representatives the plan sheets, which detailed where the property would access the frontage road and that its direct access to Highway 501 was being eliminated.

■ Brenco presented no evidence of fraud or misrepresentation by SCDOT with regard to the access. Their argument was that representatives were under a different impression regarding the access. "An erroneous impression taken up from the suggestion of the party's own mind does not relieve him from the contract." *Richardson's Rests., Inc. v. Nat'l Bank of South Carolina,* 304 S.C. 289, 297, 403 S.E.2d 669, 673 (Ct.App.1991). Accordingly, there is no ground for rescission based upon unilateral mistake.

■ Brenco also failed to establish any mutual mistake regarding the access the property would have to Highway 501 under the 1993 plans. As to direct access, SCDOT offered significant proof it intended to allow access only to the frontage road and not to Highway 501.[1] As to access by way of the intersection of Highway 501 and George Bishop Parkway, Brenco asserts both its representatives and Ratchford, acting

---

1. Brenco contends the trial court erred in finding the parol evidence rule barred its representative's testimony regarding their belief sur-

as a SCDOT representative, mistakenly believed the intersection would be unchanged under the 1993 plans. They cite to a passage in Ratchford's deposition in which Brenco's counsel asked whether under the 1993 plans a westbound traveler on Highway 501 would have been able to reach Brenco's property by turning right onto George Bishop Parkway and then left onto the frontage road. Although Ratchford answered in the affirmative, no follow-up questions were asked to determine if the intersection would remain unchanged. At trial, Ratchford explained that under the 1993 plan the intersection of Highway 501 with George Bishop Parkway was closed, but an exit ramp from the highway terminated at George Bishop Parkway and the frontage road. Thus, his deposition testimony was correct as far as it went. Two questions that were neither asked nor answered were whether eastbound travelers would have been able to exit directly from Highway 501 onto George Bishop Parkway, and whether any traveler would have been able to exit Brenco's property directly onto Highway 501 in either direction.

As to the elevation, Brenco asserted SCDOT knew about the change in grade but failed to alert them during the initial negotiations. SCDOT offered testimony that although grade studies were being conducted, it was not until after the signing of the deed that they learned the project would require raising the grade of the road. All evidence in the record indicates that when the deed was signed, both parties believed and intended the highway would remain at grade. Also, Brenco has failed to demonstrate how they were intentionally misled by SCDOT. That elevation studies were being conducted does not demonstrate SCDOT knew the grade would be altered. There is no evidence SCDOT intentionally withheld knowledge the grade would be raised due to construction concerns.

### B.  Negligent Misrepresentation

■ We also find no basis for Brenco's allegation SCDOT negligently misrepresented the property's loss of direct access to the highway or the highway's grade change.

---

rounding the access of the property to Highway 501. We agree, but even considering the testimony, we find Brenco failed to prove the deed should be rescinded due to unilateral or mutual mistake. *See S. Realty & Constr. Co. v. Bryan*, 290 S.C. 302, 309, 350 S.E.2d 194, 198 (Ct.App.1986) (holding parol evidence is admissible to show mistake).

To prove negligent misrepresentation, Brenco was required to show SCDOT made a false representation to Brenco, had a pecuniary interest in making the representation, owed Brenco a duty of care to communicate truthful information to Brenco, and breached that duty of care. Additionally, Brenco was required to establish it justifiably relied on the representation and suffered a pecuniary loss as a proximate result. *Sauner v. Pub. Serv. Auth. of South Carolina,* 354 S.C. 397, 407, 581 S.E.2d 161, 166 (2003).

As discussed above, all documentation provided to Brenco indicates access would be restricted and would not be directly to Highway 501. Additionally, the record shows SCDOT did not intend to raise the grade of the road to its resulting height when it purchased the property from Brenco. Because Brenco failed to prove SCDOT made any false representation regarding either the property's access to Highway 501 or the grade of the highway, the trial court properly refused to rescind the deed under a theory of negligent misrepresentation.

## II. Inverse Condemnation

Brenco argues the trial court erred in bifurcating the case and refusing to reopen the record to accept additional damages. Alternatively, it argues the court erred in failing to award damages for inverse condemnation. Under the peculiar facts of this case, we hold the court should have allowed additional evidence of damages to the property caused by the changes made to the road project not reflected in the deed from Brenco to SCDOT or the 1993 project plans.[2]

The decision whether to reopen a record for additional evidence is within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *Wright v. Strickland,* 306 S.C. 187, 188, 410 S.E.2d 596, 597 (Ct.App.1991). In *Wright,* this court affirmed a trial court's refusal to reopen a record where counsel for the party seeking to reopen did not proffer any testimony or make any showing

---

**2.** In addition to increasing the grade of the highway, SCDOT's third exhibit shows an exit ramp was moved from the 1993 plans to the 2000 plans. Brenco asserts this negatively affects the ability of westbound travelers to recognize the property in time to take the appropriate exit.

the evidence would make any difference to the outcome of the case. This court reasoned the trial court properly declined the party's attempt at a "fishing expedition." *Id.*

In this case, Brenco submitted evidence the changes from the 1993 plans to the final completed project caused substantial pecuniary damage to their property. However, at trial Brenco also alleged it was unaware that because of the conveyance of frontage to SCDOT and the 1993 plans, the property would lose direct access to the highway and that a nearby intersection providing alternate access to the highway would be closed. Because of these additional allegations— directed at setting aside the deed—Brenco's expert calculated damages based on the property's before and after value.

The trial court expressed concern about the issue of damages in the inverse condemnation action in a letter announcing its ruling on the deed rescission claim. It was only after this letter and the resulting damages conference that Brenco realized it needed to establish damages in a different fashion. As a result, counsel asked to reopen the case. However, the court later announced both its refusal to reopen the case and its ruling on inverse condemnation in a single letter requesting SCDOT draft an appropriate order. In the letter, the court stated it was "truly uncomfortable" with its rulings and did not know when a case had given the court "so much concern as this one." Unlike the party in *Wright*, Brenco attempted at the reconsideration hearing to proffer evidence the trial court found it had failed to establish at trial. Even at this hearing, the trial court openly struggled with the issue of damages and seriously considered allowing the testimony. Under these peculiar circumstances, where the evidence of what was contemplated at each stage of the road project was so complex and the inverse condemnation calculations were contingent on the outcome of another theory of the case, we believe the trial court abused its discretion in not reopening the record for additional evidence of damages. Thus we remand the case to the trial court for additional testimony limited to the damages, if any, caused by the changes in the project as envisioned by the August 18 1993 plan and as referenced in the deed from Brenco to SCDOT, and the final project as built.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

BEATTY and SHORT, JJ., concur.