THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
 THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 RV Resort and Yacht Club Owners Association, Inc., Jean Littell,
 Kathy Fudge, Dwight Blakeslee, Herb Hook, Stan Bronson, Peg Bender, and
 Claudette Delpesco, on behalf of all members of the Association similarly
 situated Individually, Respondents,
 v.
 BillyBobs Marina, Inc., d/b/a Outdoor RV Resort and Yacht Club, Appellant.
 
 
 

 Appeal From Beaufort County
  Thomas Kemmerlin, Special Referee

 Unpublished Opinion No. 2007-UP-556
 Heard November 6, 2007  Filed December
 14, 2007

 AFFIRMED IN PART, REVERSED IN PART

 
 
 
 James B. Richardson, Jr., of Columbia, for Appellant.
 John R. C. Bowen, of Hilton Head Island, for Respondents.
 
 
 

PER CURIAM:  In
 this action to enforce covenants, BillyBobs Marina, Inc., d/b/a Outdoor RV Resort and Yacht Club
 (BillyBob), appeals the special referees order awarding, inter alia,
 damages and attorneys fees to the RV Resort and Yacht Club Owners Association,
 Inc. (the Association).[1]
 We affirm in part and reverse in part.
FACTS
Outdoor
 Resorts RV Resort and Yacht Club (the Development) is a recreational vehicle (RV)
 resort and marina located on Jenkins Island in Beaufort County.  From the Developments
 inception in 1981, it has consisted of several separate areas.  One of these
 areas is the Marina, which has 110 slips, a fuel dock, a launching ramp, a bath
 house, fuel storage facilities, an access road, a marina office, and several
 parking spaces.  The Marina is a completely separate entity from the rest of
 the Development.  Another area is the Resort, which includes 200 lots with
 parking pads for RVs (lots), swimming pools, tennis courts, a playground, a
 yacht club/clubhouse building, roads and open space, a maintenance area, and
 utilities, including a sewage treatment facility.  Many of the lots were owned
 by individuals.  A third area is a real estate and rental management business
 (Rental Office), which includes a building, check-in areas, and parking spaces. 
 Outdoor Resort R.V. Resort and Yacht Club, a South Carolina General
 Partnership, developed the Resort and owned the Marina and Rental Office.  In
 June 1981, the Declaration of Covenants and Restrictions for Outdoor Resorts,
 R.V. Resort and Yacht Club and Provisions for the R.V. Resort and Yacht Club
 Owners Association, Inc.  (Covenants) were recorded.   
The
 Covenants provide Developer has the exclusive right to rent lots belonging to
 the individual owners within the Resort when not occupied by the owner and his
 or her guest at the scheduled rate promulgated by Developer.  The Covenants
 further provide Developer shall retain fifty percent of rental collected on
 any Lot and remit the remaining fifty percent to the lot owner.  The
 definition section of the Covenants does not contain a definition relating to
 rent or rental.    
Article
 VIII, Section 8.11 of the Covenants provides: Other reasonable rules and
 regulations governing use and occupancy and which do not alter or are not in
 contravention of any of the foregoing provisions may be made and amended from
 time to time by the Association, without the prior written consent of the
 Developer . . ..  From 1981 to 1999 the Developer rented lots, splitting the
 rental fee 50/50 with the owners and collecting an additional fee of $2.00 for
 the use of electricity.  The Developer paid the electricity fee directly to the
 owner of the lot (electricity charge).  In 1999, Dwight Blakeslee, as President
 of the Association, requested an increase in rental rates.  First, Blakeslee
 requested Developer collect an additional $1.00 per night as a road tax to
 reserve for road resurfacing.  Next, Blakeslee requested the electricity charge
 be increased $1.00 per night to $3.00 due to the increase in size and
 technology of the vehicles renting lots.  On June 23, 1999, Developer agreed to
 the Associations proposal. 
On
 July 7, 1999, Blakeslee sent a letter on behalf of the Association to Linda
 Higgins, the Rental Manager of the Developer, accepting Higgins suggestion to
 implement the new charges beginning September 15, 1999.  The letter also
 requested, in the event of a sale of Developers interest, the agreed upon
 rate increase and the allocation of those funds be made known to the buyer so
 that there will be no question as to the validity of the rate change. 
On August
 31, 1999, BillyBob bought the Marina and rental management businesses, along with
 real estate Developer owned within the Development, Developers rights to rent
 lots, and the Lease.  The electricity charge was collected and remitted to the
 lot owners for a short time following BillyBobs purchase.  
On
 October 17, 1999, BillyBob informed the Association by letter that it was
 cancelling the $3 electricity charge effective October 31, 1999.  BillyBob wanted
 to increase the nightly rental rate from $26.00 to $32.00.[2] 
 BillyBob sent a second letter the same day stating it would charge the $1.00
 per night road tax retroactively from August 31, 1999, but only if the Association
 would pass a resolution or amendment committing the Association to maintaining
 and repairing Developers roads in the same manner and state of repair as the
 Associations roads.
The Association
 rejected BillyBobs demand to undertake maintenance and repairs of Developers
 roads and objected to BillyBobs refusal to honor the previous Developers
 commitment to collect the $3.00 electricity charge and $1.00 road tax. 
BillyBob
 initiated its proposed changes and further initiated a telephone fee, charging
 renters $2.00 for lots with telephone service and paying the owners $1.00 of
 this charge.  In addition, BillyBob claimed a right of first refusal on lot
 sales and established numerous new restrictions on the owners use of their
 lots including restrictions on owners leaving vehicles on the lots and renting
 to families with children.  
The Association and
 several lot owners filed this action alleging, inter alia, BillyBobs
 violated the Covenants by failing to collect and remit all of the charges.  BillyBob
 counterclaimed asserting numerous violations of the Covenants including
 permanent residents living on their lots in the Resort.  Following a bench
 trial, the referee found the Covenants governed, the Association had the
 authority to adopt and modify rules and regulations as long as not in contravention
 of the Covenants, and BillyBob had no right to modify the Covenants or
 promulgate rules in contravention thereof.  The referee found BillyBob violated
 the Covenants by failing to collect the road tax, and failing to remit all of
 the money collected for electricity and telephone charges.  The referee also
 found BillyBob violated the Covenants in numerous other manners, including
 allowing marina guests to use the Associations common areas and prohibiting guests
 with children to rent waterfront lots.  The referee ordered an accounting to
 determine sums due the Association.  The referee also found neither party entitled
 to attorneys fees for the issues determined to date.  
After
 a hearing on the accounting and the remaining issues, the referee awarded the
 Association $48,447.50 for the road tax fund, $145,831.50 for electricity
 charges, and $1,048.50 for telephone charges.  Additionally, the referee awarded attorneys fees of $52,212.50 and costs of
 $16,379.05.  BillyBob appeals.
STANDARD OF REVIEW
This court recently addressed the standard of review
 in an action to enforce restrictive covenants:

 The character of an action as legal or equitable depends on the
 relief sought. Compare OShea v. Lesser, 308 S.C. 10, 14, 416 S.E.2d 629, 631
 (1992) (holding an
 action for breach of restrictive covenants was at law,
 because relief sought was general damages for loss of
 view and invasion of privacy) [with] Kneale v. Bonds, 317 S.C.
 262, 265, 452 S.E.2d 840, 841 (Ct. App. 1994) (An action to enforce restrictive covenants by injunction is
 in equity.); see also S.C. Dept of Natural Res. v. Town of McClellanville,
 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001) (holding an action to enforce restrictive covenants by injunction is
 an equitable action). . ..  [If
 the] action is one to enforce restrictive covenants by
 injunction, it is in equity, and we may find facts in accordance with our own
 view of the evidence.  Brenco v. S.C. Dept of Transp., 363 S.C. 136,
 142, 609 S.E.2d 531, 534 (Ct. App. 2005).  

Cedar Cove
 Homeowners Assn v. DiPietro, 368 S.C. 254, 258, 628 S.E.2d 284, 286 (Ct. App. 2006).  If the
 action for breach of covenants is at law, we will not disturb the trial courts
 findings unless they are unsupported by the evidence.  OShea v. Lesser,
 308 S.C. 10, 14, 416 S.E.2d 629, 631 (1992).
LAW/ANALYSIS

I.  Covenants
BillyBob contends the referee erred in finding it was
 required to collect the road tax for the benefit of the Association and to
 collect and remit the full electricity and telephone charges.  We disagree.
Restrictive
 covenants are contractual in nature, so that the paramount rule of construction
 is to ascertain and give effect to the intent of the parties as determined from
 the whole document.  S.C. Dept of Natural Res. v. Town of McClellanville, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001). The language of a
 restrictive covenant is to be construed according to the plain and ordinary
 meaning attributed to it at the time of execution.  Hardy v. Aiken, 369
 S.C. 160, 166, 631 S.E.2d 539, 542 (2006).  
BillyBob contends
 the charges constitute rent, which he has the exclusive right to set, and thus,
 they are subject to the equal division between BillyBob and the lot owners.  BillyBob
 relies in part on the Associations letter discussing the changes in which they
 refer to the charges as part of the increase in rental rates.  However, as
 the letter described, these charges would not operate as the rental rate did, because
 the charges would pass directly to the lot owners instead of being subject to a
 split.  The Covenants grant the Association the right to promulgate rules and
 regulations without BillyBobs permission.  We find BillyBob was required to
 collect the charges on behalf of the Association and therefore affirm the
 referees findings on this issue.
II.  Permanent Resident 
BillyBob
 next contends the referee erred in failing to find Dwight Blakeslee, a lot
 owner, was permanently residing on his lot in violation of the Covenants.  We
 disagree.
Article
 VIII, section 8.1, of the Covenants state: It is the specific intent of this
 Declaration to create and maintain a lu[x]ury resort for recreational vehicles
 and to prohibit permanent or semi-permanent structures as well as any structure
 or vehicle which is used as, or designed for use as, permanent living quarters
 on any Lot.  The section further provides: Lot Owners . . . are prohibited
 from erecting or placing on any Lot any permanent or semi-permanent structure
 or any vehicle which is designed as permanent living quarters . . .. 
BillyBob
 contends Blakeslees claim of the homestead exemption for tax purposes
 indicates Blakeslee is a permanent resident.  See S.C. Code Ann. §
 12-37-250(A)(1)(Supp. 2006) (providing, for certain classes of people: The
 first fifty thousand dollars of the fair market value of the dwelling place of
 a person is exempt from county, municipal, school, and special assessment real
 estate property taxes. . ..).  Dwelling place is defined as the permanent
 home and legal residence of the applicant.  Id. at §12-37-250(A)(5).  
However,
 there is other evidence in the record that Blakeslee is not a permanent
 resident.  Jean Littell, a long time owner and board member, testified
 Blakeslee was not a permanent resident.  She testified he travels between three
 and six months out of the year and when he travels he usually takes his RV with
 him.  BillyBob did not present any testimony that Blakeslee actually
 permanently resided on his lot.  We find no reversible error in the referees
 finding that Blakeslee was not a permanent resident.
III.  Attorneys Fees
BillyBob
 maintains the referee erred in awarding fees and costs to the Association
 instead of BillyBob.   We agree the Association was not entitled to attorneys
 fees.
An
 award of attorneys fees and costs is a discretionary matter not to be
 overturned absent abuse by the trial court.  Donahue v. Donahue,
 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989).  An abuse of discretion
 occurs when the decision is controlled by some error of law or is based on
 findings of fact that are without evidentiary support.  Degenhart v. Burriss, 360 S.C. 497, 500, 602 S.E.2d 96,
 97 (Ct. App. 2004).  Generally, attorneys fees are
 not recoverable unless authorized by contract or statute.  Baron Data Sys.,
 Inc. v. Loter, 297 S.C. 382, 383, 377 S.E.2d 296, 297 (1989).  Restrictive
 covenants are contractual in nature.  Hoffman v. Cohen, 262 S.C. 71,
 75, 202 S.E.2d 363, 365 (1974).
The Covenants and the Lease
 allow for the recovery of attorneys fees for the prevailing party.  The South Carolina Supreme Court has defined a
 prevailing party as one who successfully prosecutes the action or successfully
 defends against it, prevailing on the main issue, even though not to the extent
 of the original contention [and] is the one in whose favor the decision or
 verdict is rendered and judgment entered.  Heath
 v. County of Aiken, 302 S.C. 178, 182-83, 394 S.E.2d 709, 711 (1990)
 (alteration in original).
In its
 first order, the referee found because each of the parties had prevailed on
 some issues, neither was entitled to attorneys fees.  The referee stated: I
 will consider attorney[]s fees on the remainder of the case after a hearing on
 the merits of the remaining issues.  The remaining issues involved an
 accounting and allegations by the Association of fraud by BillyBob.  In the
 final hearing, the referee found no fraud by BillyBob but awarded attorneys
 fees to the Association of $52,212.50 and costs of $16,379.05.  Furthermore, the referee failed to make specific findings in support of the
 attorneys fees.  Our case law and
 court rules make clear that when a contract or statute authorizes an award of
 attorneys fees, the trial court must make specific findings of fact on the
 record for each of the required factors to be considered.  Griffith v. Griffith, 332 S.C. 630, 646, 506 S.E.2d 526, 534-35 (Ct. App. 1998).  Accordingly,
 we reverse the award of attorneys fees and costs.  
BillyBob also
 contends it should have received attorneys fees.  BillyBob likewise prevailed
 only on some of the issues and the record does not support an award of
 attorneys fees.  Accordingly, the referee did not err in failing to award BillyBob
 attorneys fees.
CONCLUSION
Based on the
 foregoing, the order of the trial court is
AFFIRMED IN PART
 AND REVERSED IN PART.
ANDERSON, SHORT, and WILLIAMS, JJ., concur.

[1] Several individual members of the Association
 are named plaintiffs.  We refer to all plaintiffs collectively as the
 Association.
[2] At the time of purchase, the rental rate was
 $26.00.  Owners received one-half of the rental, or $13.00, plus the $3.00
 electricity charge for a total of $16.00 per night.  Developer received
 one-half of the rental, or $13.00 per night.  Under BillyBobs proposed change,
 the rental rate was first $29, then $32, and both owners and BillyBob would
 receive $16.00 per rental night.