**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

David Garrison and Diane G. Garrison, Plaintiffs,

v.

Dennis Pagette and Melanie Pagette, Appellants,

v.

Nesbitt Surveying Co. Inc., Respondent.

Appellate Case No. 2009-130269

-----

Appeal From Florence County
Thomas A. Russo, Circuit Court Judge

-----

Unpublished Opinion No. 2012-UP-487
Heard February 29, 2012 – Filed August 8, 2012
Withdrawn, Substituted, and Refiled October 31, 2012

-----

**AFFIRMED**

-----

Hugh L. Willcox, Jr., of Willcox, Buyck & Williams, P.A., of Florence, for Appellants.

Everett Joseph Mercer, of Sumter, for Respondent.

-----

**PER CURIAM:** In this action to establish the right of a dominant estate holder to use an easement, the owners of the servient estate appeal an adverse decision on their third-party complaint against their surveyor. We affirm.

In January 2001, Appellants Dennis and Melanie Pagette purchased approximately twenty-seven acres of real estate for $100,000. They intended to build their home on the property because it was near Melanie Pagette's medical practice. Before closing on the sale, Dennis Pagette hired Respondent Nesbitt Surveying Co., Inc.,[1] to survey the property. Nesbitt had previously surveyed the property on which Melanie Pagette's office building was located.

In preparing the survey plat for the Pagettes, Nesbitt looked at deeds to adjacent properties and previous deeds to the property the Pagettes intended to buy. He also looked at a 1939 plat prepared by Surveyor R.N. Welchel. Although the Welchel plat showed a farm road, the road did not appear on the plat that Nesbitt prepared for the Pagettes. Nesbitt did, however, reference the Welchel plat by its deed book and page number.

On March 23, 2001, shortly after the Pagettes closed on their property, David and Diane Garrison, who owned an adjacent lot, asserted they had an access easement across the Pagettes' land. The path of the alleged easement was along the farm road shown in the Welchel plat. The Pagettes refused to allow the Garrisons to use the easement, prompting the Garrisons to sue to enforce their access rights. The Pagettes then brought a third-party complaint against Nesbitt, alleging the Nesbitt survey failed to denote the existence of the easement claimed by the Garrisons. By agreement of the parties, the Pagette's third-party action was held in abeyance until the trial court adjudicated the Garrisons' claim. While their third-party claim against Nesbitt was held in abeyance, the Pagettes subdivided their property and sold four of the subdivided lots, netting more than $300,000.

The trial court issued an order finding the Garrisons had an express appurtenant easement over the Pagettes' property. The court later conducted a bench trial on the Pagettes' third-party claim against Nesbitt and awarded judgment to Nesbitt on all issues raised by the Pagettes in their third-party complaint. The court found the

---

[1] The name "Nesbitt" will refer interchangeably to both Nesbitt Surveying Company and David Nesbitt, who testified on behalf of Nesbitt Surveying Company.

Pagettes failed to establish both that Nesbitt breached the standard of care and that the alleged breach resulted in damages. The Pagettes then filed this appeal.

1. We agree with the trial court that the Pagettes failed to establish they were damaged as a result of Nesbitt's alleged breach of the standard of care. In support of this finding, the trial court noted Dennis Pagette testified he subdivided the property and sold the subdivided parcels for an aggregate amount well in excess of what the Pagettes paid for the entire lot. Furthermore, although the Pagettes claimed to have suffered losses from the deterioration of building materials they had bought but could not use because of the Garrisons' lawsuit, the trial court, noting the materials were purchased several months after the issue of the easement had been brought to their attention, held these losses could not support an award of damages, and the Pagettes have not taken issue with this finding.

On appeal, the Pagettes point out that the net proceeds they received from the sale of their property should have been reduced by the cost they incurred to build a small house on the property and interest accruing on the house they intended to sell after they built their new home. Even considering these purported losses, however, the evidence supports a finding that the Pagettes netted an amount exceeding what they paid for the property.

As of the time of trial, the Pagettes sold several of the subdivided parcels for a total of $311,251 and still had one additional tract that was expected to sell for approximately $59,000. They spent $60,000 to build a small guest house on the property and lived there until they relocated to another state. Based on this sparse information, we hold it was reasonable for the trial judge to find the Pagettes failed to show they sustained a loss whether or not Nesbitt was negligent in failing to provide adequate disclosure of the Garrisons' easement.

Dennis Pagette opined that based on his experience in construction work, if he had been able to build a home on the property as he had intended, he would have spent $200,000 and the value of the property would have increased to $500,000. If the $200,000 included the purchase price, then the Pagettes would have arguably realized a profit of $400,000, less their construction expenses, incidental costs, and the $100,000 they paid for the lot. The assertion that the improved property would have been worth $500,000, however, was based on the assumption that the Garrisons would agree to relinquish their easement rights. No evidence was presented that the Garrisons were willing to enter into any such arrangement, let alone without compensation; therefore, we hold the trial court correctly

disregarded any evidence the Pagettes presented as to what they could have received for the property had it not been encumbered by the easement.

Moreover, there was no evidence that the value of the property was diminished by the easement to the extent that the Pagettes paid more than a fair market price for it. *See Truck S., Inc. v. Patel*, 339 S.C. 40, 48, 528 S.E.2d 424, 428-29 (2000) ("An encumbrance is a right or interest in the land granted 'which may subsist in third persons to the diminution in value of the estate although consistent with the passing of the fee.'" (quoting *Martin v. Floyd*, 282 S.C. 47, 51, 317 S.E.2d 133, 136 (Ct. App. 1984) (quoting 21 C.J.S. *Covenants* § 142 (1940)))); *cf. Whitlock v. Stewart Title Guar. Co.*, Op. No. 27169 (S.C. Sup. Ct. filed Sept. 12, 2012) (Shearouse Adv. Sh. No. 32 at 18, 21) (noting a title insurer's liability generally extends to "'losses or damages caused by defects in the property's title,'" which "'may generally be defined as liens and encumbrances that result in a loss in the title's value'" (quoting *Stanley v. Atl. Title Ins. Co*, 377 S.C. 405, 411, 661 S.E.2d 62, 65 (2008)))). Without this information, we can only speculate about the damages the Pagettes suffered as a result of Nesbitt's alleged failure to provide adequate disclosure of the easement on the survey. *See Yadkin Brick Co. v. Materials Recovery Co, L.P.*, 339 S.C. 640, 646, 529 S.E.2d 764, 767 (Ct. App. 2000) ("The amount of damages need not be proved with mathematical certainty. The evidence, however, should be such that a court or jury can reasonably determine an appropriate amount.").

Finally, the Pagettes argue they sustained a loss on the half-acre of land that was encumbered by the easement because they received only one dollar for this property. In their complaint, however, they sought damages only for the diminution in value of the entire lot. Moreover, there was no evidence as to what portion of the purchase price they paid for the entire tract should be apportioned to the half-acre on which they have claimed a loss. Without such evidence, the trial court could not have been expected to determine with any degree of reasonable certainty the damages sustained by the Pagettes on this portion of their property.

2. Regardless of whether the Pagettes' action against Nesbitt sounded in contract or tort, we agree with the trial court that proof of damages was an essential element of their claim. *See Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000) ("To establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty."); *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d

602, 610 (1962) (stating a plaintiff suing for breach of contract has the burden "to prove the contract, its breach, and the damages caused by such breach"). Therefore, even if we were to disagree with the trial court about whether the Pagettes demonstrated a breach by Nesbitt of the standard of care, our concurrence with the trial court's finding that the Pagettes failed to establish that they suffered damages from the alleged breach warrants affirmance of the judgment for Nesbitt. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive).

**AFFIRMED.**

**WILLIAMS, THOMAS, and LOCKEMY, JJ., concur.**