582 S.E.2d 410

## SOUTH CAROLINA COASTAL CONSERVATION LEAGUE and Sierra Club, Respondents,

v.

## SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Office of Ocean and Coastal Resource Management, Port Royal Plantation, and the Town of Hilton Head Island, Petitioners.

No. 25663.

Supreme Court of South Carolina.

Heard May 14, 2003.
Decided June 9, 2003.

Curtis L. Coltrane, of Coltrane, Alford & Wilkins, of Hilton Head Island, and Leslie West Stidham, Chief Counsel of S.C. Department of Health and Environmental Control—Office of Ocean and Coastal Resource Management, of Charleston, for Petitioners.

James S. Chandler, Jr., of Pawleys Island, for Respondents.

Justice PLEICONES:

We granted certiorari to consider a decision of the Court of Appeals holding that the South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management (OCRM) was prohibited by the Beachfront Management Act[1] (BMA) from issuing permits allowing existing groins[2] to be repaired or new groins to be constructed. *South Carolina Coastal Conserv. League v. South Carolina Dep't of Health and Envtl. Control,* 345 S.C. 525, 548 S.E.2d 887 (Ct.App.2001). We reverse.

## FACTS

OCRM issued a permit to petitioner Port Royal Plantation allowing petitioner to construct four new groins and to refurbish 17 existing groins. Respondents filed a request for a contested case hearing, seeking to overturn the permit. The

---

1. S.C.Code Ann. §§ 48–39–10 et seq. (Supp.2002).

2. A groin is defined as "a structure designed to retard erosion of a beach by trapping littoral drift. Groins are usually perpendicular to the shore and extend from the shoreline into the water far enough to accomplish their purpose. Groins are narrow and vary in length from less than one hundred feet to several hundred feet...." 23A S.C.Code Ann. Reg. 30–1(24) (Supp.2002).

administrative law judge (ALJ) granted petitioners'[3] motion for summary judgment, and respondents appealed to the Coastal Zone Management Appellate Panel, which affirmed the ALJ's decision. On appeal, the circuit court upheld the issuance of the permit.

Respondents then appealed to the Court of Appeals, which reversed. *South Carolina Coastal Conserv. League v. South Carolina Dep't of Health and Envtl. Control, supra.* The Court of Appeals held that the BMA prohibited the OCRM from issuing a permit for the construction of new groins or the reconstruction of existing groins. *Id.* This certiorari followed.

## *ISSUE*

Whether the Court of Appeals erred in holding that the legislature intended to prohibit permits for the rehabilitation or construction of groins?

## *ANALYSIS*

We begin our analysis by outlining the points upon which the parties and the Court of Appeals agree. There is no question that groins are not "erosion control structures or devices" as defined by S.C.Code Ann. § 48–39–270(1) (Supp. 2002). Accordingly, all agree that the specific prohibition on the construction of new erosion control devices in S.C.Code Ann. § 48–39–290(2)(a) and the restrictions on repairs to such devices in § 48–39–290(2)(b) do not apply to groins.

Further, there is no dispute that the policy of this State, expressed in the BMA, is to "protect, preserve, restore, and enhance the State's beach/dune system," and to use beach renourishment where appropriate. S.C.Code Ann. § 48–39–260 (Supp.2002). The BMA authorized OCRM to "develop and institute a comprehensive beach erosion control policy," S.C.Code Ann. § 48–39–120(B) (Supp.2002). Further, the BMA granted OCRM the discretion to determine whether to permit or deny alterations or utilization within the 'critical areas.' S.C.Code Ann. § 48–39–210 (Supp.2002). Groins, by

---

**3.** Petitioners are OCRM, Port Royal Plantation, and the Town of Hilton Head Island.

definition, must be located in 'critical areas'[4] on the 'active beach.'[5]

Pursuant to this grant of authority, OCRM adopted regulations. One regulation specifically authorizes the use of groins where necessary "to enhance the design life of an ongoing renourishment effort...." 23A S.C.Code Ann. Reg. 30–13(N) (Supp.2002). The permit at issue in this case was issued pursuant to Reg. 30–13(N) and the BMA.

The Court of Appeals found the permit issue controlled exclusively by S.C.Code Ann. § 48–39–290. Section (A) of this statute generally prohibits new construction in the area seaward of the baseline (which includes the area where groins are located, the 'active beach'), subject to several exceptions. Groins are not among these exceptions. Therefore, the Court of Appeals held that OCRM lacked authority to issue groin permits.

Further, the Court of Appeals concluded that, because groins are not mentioned at all in the version of the BMA in effect at the time this permitting decision took place,[6] and because they must, of necessity, be constructed on the 'active beach,' 'special permits' to construct groins could not be issued pursuant to § 48–39–290(D)(1).[7] The Court of Appeals held

---

4. The 'critical area' includes beaches. S.C.Code Ann. § 48–39–10(J)(3) (Supp.2002).

5. The term 'active beach' is defined as "that area seaward of the escarpment or the first line of stable natural vegetation, whichever first occurs, measured from the ocean." S.C.Code Ann. § 48–39–270(13) (Supp.2002).

6. In March 2002, § 48–39–290(A) was amended to explicitly authorize the issuance of permits to construct and/or reconstruct groins. *See* 2002 S.C. Act No. 198. We agree with petitioners that this amendment does not moot this suit, since the effect of our decision today reversing the Court of Appeals is to reinstate their permit and all other groin permits issued under the pre-March 2002 version of the BMA.

7. This subsection provides:

(D) Special permits:
(1) If an applicant requests a permit to build or rebuild a structure other than an erosion control structure or device seaward of the baseline that is not allowed otherwise pursuant to Sections 48–39–250 through 48–39–360, the department may issue a special permit to the applicant authorizing the construction or reconstruction if the structure

that its construction of § 48–39–290, absolutely barring any construction or repair of groins, "fully comports with the purpose and policy of the [BMA]." We disagree.

Unlike the Court of Appeals, we do not find that the question of groin permits can be answered by examining § 48–39–290 in isolation. As we read § 48–39–290(A), it generally prohibits construction of recreational structures, just as § 48–39–290(B) generally prohibits construction of habitable structures. Further, to find groin permits are prohibited by § 48–39–290(D)(1) undermines the OCRM's statutory mandate to administer a "comprehensive beach erosion control policy," § 48–39–120(A), and frustrates the legislature's instruction that the State should "encourage the use of erosion-inhibiting techniques which do not adversely impact the long-term well-being of the beach/dune system" and "promote carefully planned renourishment as a means of beach preservation and restoration where economically feasible," § 48–39–260(4) and (5), since groins are defined in the regulations as erosion-retardation devices. See fn. 2, *supra; see e.g., Great Games, Inc. v. South Carolina Dep't of Rev.*, 339 S.C. 79, 529 S.E.2d 6 (2000) (statutes which are part of the same legislative scheme should be read together to ascertain legislative intent).

## CONCLUSION

We hold that the BMA authorized OCRM to issue groin permits in furtherance of the State's policy of encouraging certain types of erosion-inhibiting techniques and promoting beach renourishment where appropriate. Our conclusion that the General Assembly did not intend to ban groins is reinforced by its enactment, after the adoption of the BMA, of "The Beach Restoration and Improvement Trust Act," [8] creating a beach renourishment program to be implemented by OCRM. This Act specifically authorizes groin construction and

---

is not constructed or reconstructed on a primary oceanfront sand dune or on the active beach and, if the beach erodes to the extent the permitted structure becomes situated on the active beach, the permittee agrees to remove the structure from the active beach if the department orders the removal. However, the use of the property authorized under this provision, in the determination of the department, must not be detrimental to the public health, safety, or welfare.

**8.** S.C.Code Ann. §§ 48–40–10 through—70 (Supp.2002).

maintenance. S.C.Code Ann. § 48–40–20(3). *See e.g., Denene, Inc. v. City of Charleston,* 352 S.C. 208, 574 S.E.2d 196 (2002) ("Court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something").

The decision of the Court of Appeals is

REVERSED.

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.