THE STATE OF SOUTH CAROLINA

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 BP Staff, Inc., Appellant,
 v.
 Capital City Insurance Company, Respondent.
 
 
 

Appeal From Unknown County
Ralph K. Anderson, III, Administrative Law Court Judge

Unpublished Opinion No. 2008-UP-060
Heard December 12, 2007  Filed January
 16, 2008
AFFIRMED

 
 
 
 D. Randle Moody, II, and  Ellison F.
 McCoy, both of
 Greenville, for Appellant.
 Mark Aloysius Cullen, of W. Palm Beach,
 for Respondent.
 
 
 

PER CURIAM: At issue in this appeal is the application
 of an experience modifier rating to Appellant BP Staff in the workers
 compensation insurance policy issued by Capital City Insurance Company.  The Administrative Law Court upheld the decision by the Department of Insurance to support the
 application of S.B. Phillips experience modifier rating to BP Staff.  BP Staff
 appeals the Administrative Law Courts ruling on the ground that S.B. Phillips
 and BP Staff are separate entities owned respectively by father and son.  We
 affirm the ruling of the Administrative Law Court.
FACTS
S.B.
 Phillips is a temporary staffing agency founded in Greenville in 1968 and owned
 by Sam Phillips. Blanton Phillips, Sam Phillips son, worked for S.B. Phillips
 for several years in numerous positions until he eventually was running most
 of the back office operations of the business, accounting and payroll and risk
 management. Blanton primarily handled workers compensation for S.B. Phillips.
 In July of 2002, Blanton formed BP Staff, Inc. which provided payroll,
 staffing, risk management, and other related services to companies. Blanton is
 the sole owner of BP Staff. 
In
 September 2002, BP Staff and S.B. Phillips entered into an agreement whereby BP
 Staff would hire the temporary workers of S.B. Phillips, perform payroll
 functions for those workers, and provide workers compensation for those
 workers. In essence, BP Staff would hire S.B. Phillips temporary employees and
 perform the same back office services for those temporary employees as
 Blanton himself had performed while working with S.B. Phillips. The temporary
 workers would still be provided to S.B. Phillips for placement in temporary
 positions with S.B. Phillips clients as the workers had been in the past.
 After the agreement S.B. Phillips essentially eliminated the in-house
 performance of back office functions such as risk management while still
 performing the front office services of sales, recruiting, and customer
 service. Some of BP Staffs permanent employees were previously employed by S.B.
 Phillips. As late as 2004, permanent employees of BP Staff remained on S.B.
 Phillips payroll but were assigned to BP Staff. 
In
 September 2002, S.B. Phillips and BP Staff each applied for workers
 compensation insurance through South Carolinas Assigned Risk Pool after they
 were unable to secure coverage in the voluntary insurance market. South Carolinas Department of Insurance (Department) forwarded the applications to Capital
 City Insurance Company (Capital City), one of two carriers in the Assigned Risk
 Pool. After reviewing BP Staffs application, Capital City issued a policy for
 BP Staff with a 1.33 experience modifier rating (Modifier).  Experience
 modifier ratings (Modifier) are factors calculated using a complex formula
 developed by the National Council on Compensation Insurance (NCCI).[1] 
 NCCI also produces an experience rating plan manual (Plan Manual) that sets
 forth the rules governing the application of Modifiers to different entities
 applying for workers compensation insurance. Once approved by the Department
 of Insurance, the Plan Manual sets forth the rules regarding insurance coverage
 in the Assigned Risk Pool. 
Modifiers
 are factors which affect the total cost of an entitys premium. Under the Plan
 Manual, new companies applying for workers compensation insurance receive a
 neutral Modifier of one. If an insured has a history of above-normal claims for
 their type of industry, the insureds Modifier would increase and thus cause an
 increase in the overall premium. The Modifier system provides an incentive for
 employers to provide a safe workplace. Insurance carriers traditionally
 consider temporary staffing agencies to be a high-risk business. 
In
 its determination to apply the 1.33 Modifier of S.B. Phillips to BP Staff, Capital City reviewed the Plan Manual and information provided by S.B. Phillips and BP
 Staff before concluding the Modifier should follow the employees that created
 the experience. BP Staffs request for reconsideration of the Modifier was
 granted by Capital City but the decision to apply S.B. Phillips modifier to BP
 Staff was not altered.  BP Staff appealed Capital Citys imposition of a 1.33 Modifier
 to NCCI and then the South Carolina Department of Insurance.  The Department
 held an evidentiary hearing on October 14, 2004, after which it ruled in favor
 of Capital City. 
BP
 Staff subsequently appealed the Departments findings to the Administrative Law
 Court (ALC) on August 5, 2005. On August 23, 2006, the ALC upheld the
 Departments findings, specifically the interpretation of the Plan Manual, the
 evidence in support of applying the 1.33 Modifier to BP Staff, the sufficiency
 of the Departments findings, and the denial of BP Staffs request to reopen
 the record and admit a letter issued by NCCI subsequent to the Departments
 hearing. BP Staff filed notice to appeal with this court on September 22, 2006. 
STANDARD OF REVIEW
As
 revised by Act 387 in 2006, South Carolina Code Section 1-23-380 sets forth the
 standard of review when the court of appeals is sitting in review of a decision
 by the Administrative Law Court on an appeal from an administrative agency. 
 Section 1-23-380(A)(5) forbids the court of appeals from substituting its
 judgment for the judgment of the agency as to the weight of the evidence on
 questions of fact. S.C. Code Ann. § 1-23-380(A)(5) (2006).  The court of
 appeals may reverse or modify the decision only if substantial rights of the
 appellant have been prejudiced because the administrative decision is clearly
 erroneous in light of the reliable and substantial evidence on the whole
 record, arbitrary or otherwise characterized by an abuse of discretion, or
 affected by other error of law.  S.C. Code Ann. §§ 1-23-380(A)(5)(d)-(f) (2006). 
 The review of the administrative law judges order must be confined to the
 record.  S.C. Code Ann. § 1-23-610(C) (2006). 
The
 Departments decision can be set aside if it is unsupported by substantial
 evidence.  Hamm v. Central States Health & Life Co., 292 S.C.
 408, 410, 357 S.E.2d 5, 6 (1987); Lark v. Bi-Lo, Inc., 276 S.C.
 130, 136, 276 S.E.2d 304, 307 (1981).  Substantial evidence
 is not a mere scintilla of evidence, nor the evidence viewed blindly from one
 side of the case, but is evidence which, considering the record as a whole,
 would allow reasonable minds to
 reach the conclusion the administrative agency reached.  Taylor v.
 S.C. Dept of Motor Vehicles, 368 S.C. 33, 36, 627 S.E.2d 751,
 752 (Ct. App. 2006) cert. granted, Aug. 9, 2007; S.C. Coastal
 Conservation League v. S.C. Dept of Health & Envtl. Control, 363 S.C.
 67, 76, 610 S.E.2d 482, 487 (2005).
The
 party challenging a governmental bodys decision bears the burden of proving
 the decision is arbitrary.  Pressley v. Lancaster County, 343 S.C. 696,
 704, 542 S.E.2d 366, 370 (Ct. App. 2001).  Appellants also shoulder the
 burden of proving an agencys decision is unsupported by evidence.  Bursey
 v. S.C. Dept of Health & Envtl. Control, 360 S.C. 135, 142, 600 S.E.2d
 80, 84 (Ct. App. 2004), affd, 369 S.C. 176, 631 S.E.2d 899 (2006).
LAW/ANALYSIS
I.       The Experience
 Rating Plan Manual
BP Staff argues the Administrative Law Court improperly considered the Plan Manual. 
 This argument is not preserved for our review.
BP Staff did not contest either the Departments or the ALCs
 treatment of the Plan Manual as the applicable governing document concerning
 the issues in this case. In fact, BP Staff concedes in numerous briefs that the terms of the 1984 Plan Manual contain all rules
 applicable to this dispute. In their brief to the ALC, BP Staff uses the term
 regulation[2] when referring to the Plan Manual and presses the court to utilize the rules of
 statutory construction in interpreting the Plan Manual. 
An issue not ruled upon by antecedent trial courts is not
 preserved for appeal. West v. Newberry
 Electric Coop., 357 S.C. 537, 543,
 593 S.E.2d 500, 503 (Ct. App. 2004) (holding an issue neither addressed by the
 trial judge in the final order nor mentioned in a subsequent motion for
 reconsideration is not preserved for review); Wilder Corp. v. Wilke, 330
 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is
 axiomatic that an issue cannot be raised for the first time on appeal, but must
 have been raised to and ruled upon by the trial judge to be preserved for
 appellate review.).  In addition, a party cannot argue one ground at trial and
 an alternate ground on appeal. State v. Dunbar, 356 S.C. 138, 142, 587
 S.E.2d 691, 693-94 (2003).
II.      Part
 III(B) of the Experience Rating Plan Manual
BP Staff argues the Administrative Law Court erred in holding the
 list in Part III(B) of the Plan Manual is not a restrictive enumeration of the actions
 that cause the experience modification rating of one entity to be applied to another
 entity.  We disagree.
Part III(B) of the Plan Manual involves ownership changes which
 may affect the Modifier bestowed upon an entity.  Part III(B) explains when a
 change occurs, a determination shall be made to exclude or retain an entitys
 experience. Part III(B) further states:

 For purposes of this Plan, a change in ownership includes any of the following:
 (a) Sale, transfer or conveyance of all or a portion of an
 entitys ownership interest.
 (b) Sale, transfer or conveyance of an entitys physical assets to another entity which takes over its operations.
 (c) Merger or consolidation of two or more entities.
 (d) Formation of a new entity subsequent to the dissolution or non-operative capacity of an entity.
 (e) Voluntary or court-mandated establishment of a trustee or receiver, excluding a debtor in possession, a trustee under a revocable trust or a franchisor. 
 

In determining the nature of the list in Part III(B) the ALC first
 employed rules of statutory construction and dictionary definitions of
 include.  Where a word is not defined in a statute, our appellate courts
 have looked to the usual dictionary meaning to supply its meaning. Lee v.
 Thermal Engineering Corp., 352 S.C. 81, 91-92, 572 S.E.2d 298, 303 (Ct.
 App. 2002); State v. Dickinson, 339 S.C. 194, 199, 528 S.E.2d 675, 677
 (Ct. App. 2000) (citing Blacks Law Dictionary for the definition of
 obtaining used in a statute for obtaining property in fraudulent manner). 
 The ALC quoted the third edition of the American Heritage Dictionary of the
 English Language and Blacks Law Dictionary, the latter of which defines
 include as to contain as part of something. Blacks Law Dictionary (8th ed. 2004 and 6th ed. 1990). 
On appeal, BP Staff makes a conclusory argument that none of the[se] definitions of the word
 includes provide[s] any guidance as to whether the list contained in Part
 III(B) of the Plan Manual is exclusive in nature. Failure to provide arguments
 or supporting authority for an issue renders it abandoned. First Savings Bank v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994).  
The
 ALC also used case law to determine the nature of the list in Part III(B),
 specifically, how other courts have interpreted the term include.  BP Staff
 argues the ALC incorrectly cited three cases that allegedly utilize the term
 include in a manner to indicate a partial list. In its order the ALC referred
 to Adkins v. S.C. Dept of Corr., 360 S.C. 413, 602 S.E.2d 51 (2004), Douglass ex rel. Louthian v. Boyce, 344 S.C. 5, 542 S.E.2d 715 (2001), and Reliance Ins.
 Co. v. Smith, 327 S.C. 528, 489 S.E.2d 674 (Ct. App. 1997), as appellate
 decisions that have employed an expansive interpretation of include. Louthian, Adkins, and Reliance respectively involve the South Carolina
 Probate Code, the state prison system, and state agency rulemaking.  While none
 of these cases define include, they all illustrate courts usage of include
 in an expansive manner.  For example, in Louthian the South
 Carolina Supreme Court found that other fiduciary
 property as used in Section 62-1-109 of the South Carolina Probate Code
 includes the proceeds of a wrongful death action since such an action is
 brought by a fiduciary.  Such proceeds were not expressly enumerated in any
 definition of other fiduciary property. 344 S.C. at 10, 542 S.E.2d at
 717-18.  The supreme court has also held simply because a matter is not
 expressly mentioned in a list does not mean that matter is forbidden or
 restricted from an agencys reach.  S.C. Coastal Conservation League v. S.C.
 Dept of Health & Envtl. Control, 354 S.C. 585, 588-89, 582 S.E.2d 410,
 412 (2003).  
Appellant fails to prove the ALCs holding regarding the
 Department of Insurances interpretation of Part III(B) of the Plan Manual is
 arbitrary, characterized by an abuse of discretion, or otherwise affected an
 error of law.  S.C. Code Ann. §§
 1-23-380(A)(5)(d)-(f) (2006);   First Savings Bank, 314
 S.C. at 363, 444 S.E.2d at 514 (Mere allegations of error are
 not sufficient to demonstrate an abuse of discretion.)  Accordingly we find no
 reason exists to reverse or modify the ALCs holding.
III.    Substantial
 Evidence
BP
 Staff argues the record is devoid of substantial evidence to support the Administrative Law Courts ruling regarding the application of a 1.33 experience modifier rating to BP Staff.  We disagree.
The record is replete with evidence indicating BP Staff and S.B.
 Phillips have a unique relationship which justifies the application of S.B.
 Phillips Modifier to BP Staffs policy of workers compensation insurance.  
Neither
 Sam nor Blanton Phillips has any ownership in the others company, but S.B.
 Phillips and BP Staff have a unique relationship.  S.B. Phillips was BP Staffs
 first client. Pursuant to a 2002 contract, BP Staff hired the temporary
 employees of S.B. Phillips and provides those temporary employees back to S.B.
 Phillips for S.B. Phillips to place in employment. Under the contract BP Staff
 provides the payroll and workers compensation for those employees as well as
 risk management for that group of S.B. Phillips employees. Approximately 80
 employees remained at S.B. Phillips following the institution of the contract.
 These employees handle the front office services of sales, recruitment, and
 placement of temporary employees. 
Although
 BP Staff has over two thousand employees, only four of those employees are
 permanent or non-temporary employees. The four permanent employees work in Greenville in the same office building where S.B. Phillips is located. In the first ten
 months following BP Staffs inception, S.B. Phillips provided approximately
 ninety-seven percent of BP Staffs payroll. BP Staff and S.B. Phillips also
 applied for workers compensation coverage in an assigned risk plan at
 approximately the same time. 
Dwayne Schumpert, an underwriter at Capital City Insurance,
 reviewed BP Staffs and S.B. Phillips applications for insurance coverage as
 part of South Carolinas Assigned Risk Pool.[3] 
 To Schumpert it appeared that there had been a new company set up so that they
 would have the temporary portion and then S.B. had the permanent employees.
 From the information both companies supplied, it was clear the payroll of S.B.
 Phillips had been moved to BP Staff resulting in an initial payroll of 20
 million dollars as soon as BP Staff was formed.
Schumpert also believed BP Staff and S.B. Phillips were related
 due to the similarities in both companies applications. Although the
 applications were in separate envelopes, the envelopes were addressed in the
 same manner and were received on the same day. The applications requested the
 same effective date, expiration date, and limits as well as two types of
 coverage that are rarely requested. Both applications listed the same three
 insurance companies as proof of rejection from the voluntary market.[4] Identical portions of the
 applications were blank and both applications listed Kara deBorde as the person
 responsible for handling claims information. The identical nature of the
 applications caused Schumpert to believe the same individuals had filled out
 each companys application for coverage. 
Each application also had notations regarding the coverage they
 were requesting. The S.B. Phillips application explained we are not seeking
 coverage for temporary employees but that coverage was requested only for
 permanent, administrative staff. Likewise the BP Staff application noted,
 [t]his application is for coverage for temporary employees only. The drug
 policy information BP Staff provided to Capital City was faxed with a cover
 letter indicating it was a policy for BP Staff but many of the individual,
 substantive pages explaining the drug policy referred to S.B. Phillips or
 Phillips Staffing. 
Due to these similarities Schumpert applied the 1.33 Modifier of S.B.
 Phillips to the workers compensation insurance policy of BP Staff.  When
 Schumperts decision was further reviewed by Paula Shields at NCCI and Dean
 Kruger at the South Carolina Department of Insurance, both came to the same
 conclusion that S.B. Phillips Modifier should follow the employees to BP Staff
 which was operating as in-concert with S.B. Phillips as a successor-type
 company. BP Staff had the same operations, the same clients, the same
 employees as S.B. Phillips. At the Department of Insurance hearing, Blanton
 admitted BP Staff and S.B. Phillips operate in-concert and share employees. 
In addition, when dealing with the South Carolina Employment Security
 Commission BP Staff had claimed it was a successor to S.B. Phillips and as a
 successor, should have received a successor number and predecessor rate. BP
 Staffs report to the South Carolina Employment Security Commission further
 states that exempt wages [are] covered under predecessors employers. 
The
 Department of Insurances decision can be set aside if it is unsupported by
 substantial evidence. Hamm v. Central States Health & Life Co.,
 292 S.C. 408, 410, 357 S.E.2d 5, 6 (1987).  The possibility of drawing two
 inconsistent conclusions from the evidence does not prevent an administrative agencys
 finding from being supported by substantial evidence.  Bursey v. S.C. Dept
 of Health & Envtl. Control, 369 S.C. 176, 188, 631 S.E.2d 899,
 906 (2006). The credibility and weight of a witnesss testimony is for the
 trier of fact.  Parsons v. Georgetown Steel, 318 S.C. 63, 67, 456 S.E.2d
 366, 368 (1995).  In light of the evidence presented in the record, we
 find substantial evidence supports the ALCs finding that the Department of
 Insurances determination that S.B. Phillips Modifier should apply to BP
 Staff.
IV.    Supplementation of
 the Record
BP
 Staff argues the Administrative Law Court improperly ruled the Department of Insurance did not commit an error of law
 when the Department refused to allow cumulative supplemental evidence into the
 record following the conclusion of the evidentiary hearing.  We
 disagree.
After the Departments evidentiary hearing concluded, BP Staff
 sought to admit a November 3, 2004 letter issued by Wendy Steinberg, an employee
 in NCCIs Experience Rating Department, that states S.B. Phillips and BP Staff
 Inc. are not combinable with each other. BP Staff was unsuccessful in arguing
 the Department should admit the letter into the record. The ALC upheld the
 Departments decision and found such a decision to reopen an administrative
 record for additional evidence is within the Departments sound discretion and
 will not be disturbed on appeal absent an abuse of that discretion. Brenco v. S.C. Dept of Transp., 363 S.C. 136, 145, 609 S.E.2d 531, 536 (Ct. App.
 2005). 
BP Staff argued in their pre-hearing brief to the ALC that S.B.
 Phillips and BP Staff were not combinable. During the Departments hearing,
 evidence was presented that NCCI initially held BP Staff and S.B. Phillips were
 not combinable. In the post-hearing brief to the Department, BP acknowledges
 that during the October 14 hearing, two NCCI officials testified that BP Staff
 and S.B. Phillips were not combinable. 
Through
 BP Staffs own admissions, the letter stating BP Staff and S.B. Phillips are
 not combinable is cumulative to the evidence already in the record. Although relevant, evidence may be excluded if its
 probative value is substantially outweighed by the danger of unfair prejudice,
 confusion of the issues, or misleading the jury, or by considerations of undue
 delay, waste of time, or needless presentation of cumulative evidence. Rule 403, SCRE.  In
 addition, BP Staff has made no showing that the additional evidence of the
 November 3 letter would result in a changed outcome. To warrant reversal based
 on the admission or exclusion of evidence, the appellant must prove both the
 error of the ruling and the resulting prejudice. Wright v. Craft, 372
 S.C. 1, 34, 640 S.E.2d 486, 504 (Ct. App. 2006).  Accordingly we find no error
 of law or abuse of discretion by the ALC in upholding the Department of
 Insurances decision not to reopen the record. 
AFFIRMED.
HEARN,
 C.J., THOMAS, J., and GOOLSBY,
 A.J., concur.

[1] NCCI is a rating organization that collects data from
 carriers and provides statistical and rating information on workers
 compensation and employee injuries to several states, including South Carolina.
 
[2] Blacks Law Dictionary defines regulation to be 1)
 The act or process of controlling by rule or restriction; 2) Bylaw; 3) A rule
 or order, having legal force, usually issued by an administrative agency. (8th ed. 2004).
[3] When companies cannot obtain insurance coverage in
 the voluntary market, they may apply for coverage under South Carolinas
 Assigned Risk Pool. Applications for coverage under this program are split
 between Capital City Insurance and Companion Insurance. By chance both BP
 Staffs application and SB Phillips application were forwarded to Capital City. Schumpert noted that insurance companies traditionally think of temporary
 staffing as a high risk enterprise so many temporary staffing companies end up
 seeking coverage in a residual market such as South Carolinas Assigned Risk
 Pool. 
[4] To gain coverage in the Assigned Risk Pool, companies
 must demonstrate their applications for coverage have been rejected by at least
 two insurance carriers in the voluntary market.